**SHELDON PETROLEUM COMPANY et al., Appellants,**

v.

**Polly F. PEIRCE, Appellee.**

**No. 19038.**

Court of Civil Appeals of Texas, Dallas.

Feb. 17, 1977.

Royal H. Brin, Jr., Dallas, Donald M. Hunt, Lubbock, Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellants.

Wm. B. Browder, Jr., James V. Hammett, Jr., Stubbeman, McRae, Sealy, Lughlin & Browder, Austin, for appellee.

AKIN, Justice.

This is an appeal from an order denying defendants' pleas of privilege to be sued in Lubbock County. Mrs. Polly Peirce, plaintiff, sued defendants, Mrs. Charlotte Carter, Charles Carter, Sheldon Petroleum Company of Texas, and Sheldon Petroleum Company of Delaware. Mrs. Peirce contends that she furnished $25,000 to Mrs. Carter, that this money was used by Charles Carter to purchase oil properties now owned by Sheldon of Delaware, and that Sheldon of Delaware holds these properties in trust for her. Sheldon of Texas has been merged into Sheldon of Delaware. At the time suit was filed, Sheldon of Delaware's registered agent for service was located in Dallas County, although its only place of business in Texas was in Lubbock. Since all of the other defendants are undisputedly residents of Lubbock County, plaintiff seeks to sustain venue in Dallas under Tex.Rev.Civ. Stat.Ann. art. 1995(4) (Vernon 1964), which provides that if two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. Because we hold that Sheldon of Delaware is a resident of Dallas for venue purposes, the appeal turns on

whether plaintiff has pleaded and proved a prima facie cause of action against Sheldon of Delaware. Because we also hold that plaintiff has failed to establish a cause of action against Sheldon of Delaware, we reverse the order of the trial court and transfer the cause to Lubbock.

The business in which plaintiff alleges that her money was invested began in 1948 as a partnership between Charles Carter and Sam Mandel. This partnership, known as Carter & Mandel, was engaged in buying, selling, and developing oil and gas properties. Mandel contributed $15,000, and Charles Carter contributed his services as manager. Mandel was not actively involved in the operation of the partnership; in fact, he executed a power of attorney to permit Charles Carter to deal with partnership property and funds without the necessity of Mandel's signature. In 1952, a New York investment counselor approached the partnership for the purpose of developing tax shelters for his clients. They agreed on an agency account format in which investors signed an agency agreement and a power of attorney, giving Charles Carter authority to invest their funds in various oil and gas properties in their behalf. This agreement provided that the clients' investments were to be repaid out of profits. When each investment was repaid, Carter & Mandel was to receive 27½% of the properties acquired as its fee, with the investor retaining the remainder. In 1963, it was decided that a corporate entity would be superior to the agency account format. Pursuant to this decision, Sheldon of Texas was created. The property owned by the agency account investors, as well as most partnership property, was transferred to the corporation, which issued shares in proportion to the ownership of properties transferred. Although Carter & Mandel received 37,422 shares, Charles Carter, individually, received none. In 1969, all remaining partnership property was likewise transferred to Sheldon of Texas. Carter & Mandel received a credit for money it owed the corporation in addition to a small sum of cash; however, no additional stock was issued to the partnership. After this transfer, Carter & Mandel's sole asset was its stock in Sheldon of Texas, which became a publicly owned corporation in 1970. In 1973, Sheldon of Texas was merged, through an exchange of stock, into Sheldon of Delaware, also a public corporation. Thereafter, for all practical purposes, Sheldon of Texas ceased to exist as an active business entity. Throughout this time, Charles Carter occupied the primary position of power and control over Carter & Mandel, as well as both Sheldon corporations.

Prior to the formation of Carter & Mandel in 1948, Mrs. Peirce had developed a close friendship with Mrs. Carter while both were living in Maine. In 1947, when Charles Carter was attempting to break into the oil and gas business in Texas, Mrs. Carter solicited $5,000 from Mrs. Peirce, purportedly to help finance Charles's oil business. The two ladies agreed that Mrs. Peirce would receive one-half of any property or money received by Mrs. Carter from Charles. In 1955, Mrs. Carter obtained an additional $20,000 from Mrs. Peirce, again ostensibly to assist Charles in his oil business. Mrs. Peirce's investment, however, was not one of the usual agency accounts of Carter & Mandel. Rather, she understood that she was to share in the profits received by Charles Carter, who now denies that he ever received any of the funds advanced by Mrs. Peirce or that he was a party to any agreement concerning these funds. Mrs. Peirce is seeking to recover a portion of the property purchased by Carter & Mandel and ultimately conveyed to Sheldon of Delaware.

*Residence of Foreign Corporation*

■ Defendants contend that venue is not proper in Dallas County under article 1995(4) because no defendant resides there. It is their position that Sheldon of Delaware resides only in Lubbock County where its only place of business is located. Mrs. Peirce contends, however, that Sheldon of Delaware is a resident of Dallas County for

venue purposes because at the time the suit was commenced, its registered agent for service, as required by Tex.Bus.Corp. Act Ann. art. 8.08 (Vernon 1956), was located in Dallas. In support of her contention, she cites *Ward v. Fairway Operating Co.*, 364 S.W.2d 194, 195 (Tex.1963), which held that a domestic corporation was, for venue purposes, a resident of the county in which its registered agent was located. Defendants argue that this decision is not controlling where a foreign corporation is concerned and that the rationale given for the result in *Ward* does not apply here. We cannot agree. Although the supreme court was concerned with registered agents of domestic corporations under Tex.Bus.Corp. Act Ann. art. 2.09 (Vernon 1956) rather than registered agents of foreign corporations under article 8.08, there is no difference in the statutory language which would indicate that the considerations set forth in *Ward* should not apply. Defendants rely on language in *Ward* which indicates that the court was concerned with the problem of ascertaining which of several offices was the principal office and contend that this decision is not applicable because Sheldon of Delaware has only one place of business. Although *Ward* does mention the multiple office problem, it is not the basis of the decision. The court also states that the statute provides for a place of residence where a corporation can always be found and notes that if a corporation believes dual residence is a burden, it has the power to alleviate the burden by designating its principal place of business as its registered office. Indeed, Sheldon of Delaware has done so since this suit was instituted. Since the supreme court did not expressly limit its decision in *Ward* to domestic corporations with multiple outlets, we conclude that the basic rationale behind that decision likewise applies to foreign corporations. We hold, therefore, that a foreign corporation is a resident, for venue purposes, of the county in which its registered agent is located at the time suit is filed. A similar holding was reached in *Zurich Insurance Company v. Wiegers*, 527 S.W.2d 511, 514 (Tex.Civ.App.

—Austin 1975, no writ). Since Sheldon of Delaware is a resident of Dallas County, venue against all defendants may be maintained in Dallas if Mrs. Peirce pleaded and proved that she has a cause of action against Sheldon of Delaware and that the nonresident defendants are properly joined. Tex.Rev.Civ.Stat.Ann. art. 1995(4) (Vernon 1964); *Stockyards National Bank v. Maples*, 127 Tex. 633, 95 S.W.2d 1300 (1936)

### Plaintiff's Causes of Action

Mrs. Peirce contends that Charles Carter, Carter and Mandel, Sheldon of Texas, and Sheldon of Delaware were, in succession, either constructive or resulting trustees of the $25,000 she paid to Charlotte Carter and the property into which this money mutated. Constructive and resulting trusts, although similar, have different theoretical bases. A resulting trust exists where one party (A) allows a second party (B) to take legal title to property purchased with A's money. It requires an intent to place legal title in B, even though equitable title remains in A. On the other hand, intent is not necessary for the creation of a constructive trust. A constructive trust will be imposed in equity where the party with legal title would be unjustly enriched if permitted to retain the property. 5 A. Scott, *Law of Trusts*, §§ 404.2, 440.1, 462.1 (3d ed. 1967).

### A. Resulting Trust

The doctrine of resulting trust is based on the concept that equitable title should rest with the party who furnishes consideration for a purchase. *Tolle v. Sawtelle*, 246 S.W.2d 916, 918 (Tex.Civ.App.—Eastland 1952, writ ref'd). The resulting trust must, therefore, arise when legal title passes to the one upon whom the trust is to be imposed. *Solether v. Trinity Fire Ins. Co.*, 124 Tex. 363, 78 S.W.2d 180, 182 (1935). Due to the nature of the doctrine, it is necessary that the party seeking to impose the trust trace his interest into the consideration which is given when legal title to specific property is passed to the person

against whom the trust is asserted. *Landon v. Brown*, 266 S.W.2d 404, 406 (Tex.Civ. App.—Amarillo 1954, writ ref'd n. r. e.). Mrs. Peirce does not know what was done with the $25,000 after it was given to Mrs. Carter. She cannot, therefore, assert a resulting trust against Sheldon of Delaware because she has not traced the $25,000 into any property or money which constituted consideration for any purchase made by Charles Carter, Carter and Mandel, Sheldon of Texas, or Sheldon of Delaware. We conclude, therefore, that she has failed, as a matter of law, to establish a resulting trust against any of the assets of Sheldon of Delaware, the resident defendant.

### B. Constructive Trust

■ Alternatively, Mrs. Peirce contends that Sheldon of Delaware holds property as a constructive trustee for her benefit. A constructive trust will be imposed where it would constitute unjust enrichment if the party in possession of property is allowed to retain it. *Fitz-Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 262, 264–65 (1951). Ordinarily, this requires a showing that retention of specific property would constitute unjust enrichment; that is, that the party asserting the constructive trust must be able to show what property he is entitled to have. *See Meadows v. Bierschwale*, 516 S.W.2d 125, 129 (Tex.1974). As noted above, Mrs. Peirce is unable to do so. The courts have recognized, however, that it would be inequitable to place the burden of tracing on the party asserting the trust where the constructive trustee has wrongfully commingled his own funds or property with funds or property against which a trust is asserted, especially where the proof necessary to separate the funds is peculiarly within the knowledge and possession of the trustee. *Logan v. Logan*, 138 Tex. 40, 156 S.W.2d 507, 510–11 (1941). *Cf. Humble Oil & Refining Co. v. West*, 508 S.W.2d 812, 818 (Tex.1974) (applying the rule in a "confusion of goods" case). If the property is commingled and the trustee does not establish which is his, the entire fund is considered to be subject to the trust. *Eaton v. Husted*, 141 Tex. 349, 172 S.W.2d 493, 498–99 (1943). Before this burden will be imposed, however, it is incumbent upon the party asserting the trust to show that the funds were in fact commingled and that commingled funds were used to purchase the property against which the trust is asserted. *Landry v. Williamson*, 335 S.W.2d 400, 405 (Tex.Civ.App.—Houston 1960, writ ref'd n. r. e.).

■ Since the trial court denied the pleas of privilege, but did not file findings of fact or conclusions of law, we will presume it made any findings necessary to support its order if such findings are supported by sufficient evidence. *National Farmers Organization v. Ramsey*, 500 S.W.2d 192, 193 (Tex. Civ.App.—Amarillo 1973, no writ). To establish a cause of action against the resident defendant, Sheldon of Delaware, Mrs. Peirce must show the property purchased with commingled funds is in the possession of Sheldon of Delaware. In order to find this, the trial court had to find first that funds acquired from Mrs. Peirce were commingled with Carter and Mandel funds. This is so because the property which was transferred to the Sheldon corporations came from Carter and Mandel (and the agency accounts), not from either of the Carters individually. There is no evidence that Charles Carter used Carter and Mandel funds to purchase specific property for the partnership in violation of an agreement to purchase this property for Mrs. Peirce. The record shows that she is unable to identify any property as that purchased with her funds. It is this fact which necessitates the use of the commingling theory if Mrs. Peirce is to establish a cause of action against Sheldon of Delaware. We are, therefore, presented with the question of whether there is sufficient evidence to support a finding that Mrs. Peirce's funds were commingled with Carter and Mandel funds.

■ Mrs. Peirce produced a letter agreement, dated November 21, 1947, signed by herself and Mrs. Carter. This agreement

provided that Mrs. Peirce would give Mrs. Carter $5,000 to help Charles Carter "in the promotion and financing of Texas 'oil deals' . . .." Mrs. Peirce was to receive one-half of any money or property which Mrs. Carter received in return for the investment. Mrs. Peirce visited the Carters in Texas regularly and had frequent telephone conversations in which they discussed the oil business in a general way. In 1951, during one of her visits, Charles Carter took Mrs. Peirce to inspect a drilling site in Scurry County. Mrs. Peirce testified to a conversation she had with Charles while inspecting the site: "So I finally said, well, Charles, your mother says that I won't get any money out of this because you have to live on it and he said that's true and changed the subject." In 1955, Mrs. Peirce testified, the Carters asked Mrs. Peirce to come to Texas to discuss winding up a failing antique business in which Mrs. Peirce and Mrs. Carter were partners and also "to talk about a further investment in the oil business." On May 31, 1955, Mrs. Peirce testified that she had a lengthy discussion with the Carters concerning her investment. During this conversation, she said, the Carters requested her to make additional investments in the oil business. Pursuant to this conversation, Mrs. Peirce and Mrs. Carter signed an agreement which provided that Mrs. Peirce would invest an additional $20,000. In return, Charles was to transfer one-half of his interest in Carter and Mandel to Mrs. Carter, who would, in turn, assign half of her interest to Mrs. Peirce; in other words, Mrs. Peirce would receive one-eighth of the Carter and Mandel interest. In 1957, Charles wrote a letter to Mrs. Peirce in which he stated that "our oil business is going along very well indeed," which she thought referred to "her" interest in the business. She further testified that this interpretation was supported by telephone conversations in 1956 in which Charles and Mrs. Peirce discussed promising developments in Oklahoma property. There was even a champagne toast, via long distance, to celebrate their good fortune. No payments were made, however, to Mrs. Peirce at any time. After another major oil strike in 1972, Mrs. Peirce again requested payment and was told by Mrs. Carter that she would be given one thousand shares of Sheldon of Delaware, which was worth six to seven dollars per share. Feeling betrayed, Mrs. Peirce instituted this litigation.

There was testimony from Charles Carter, Sam Mandel, and an independent accountant that Charles Carter never made a capital contribution to the partnership; his interest was based solely on services rendered. This testimony also revealed that no capital contribution was made by Mrs. Carter or Mrs. Peirce. The sole capital contribution was the $15,000 supplied by Mandel.

We hold that this evidence is insufficient to support a finding that Mrs. Peirce's funds were commingled with Carter and Mandel funds. Since she is unable to trace any of her money into specific property held by Sheldon of Delaware, her failure to show a commingling negates a constructive trust against Sheldon of Delaware. Admittedly, had Charles Carter contributed capital to the partnership, even though it might not have been the precise funds furnished by Mrs. Peirce, she may have established a constructive trust, at least with respect to Carter's share of the stock in Sheldon of Delaware held by Carter and Mandel. *See* 5 A. Scott, *Law of Trusts,* § 440.1 (3d ed. 1967). Since no funds were put into the partnership by Charles Carter, no funds upon which a trust could have been imposed were traced into Carter and Mandel. Mrs. Peirce has failed, therefore, to establish a cause of action against the only defendant that is a resident of Dallas County, Sheldon of Delaware. Accordingly, defendants' pleas of privilege to be sued in Lubbock County should have been sustained. The order of the trial court is, therefore, reversed and this cause is ordered transferred to Lubbock County for further proceedings.