**Ida TAMEZ, Individually and as next friend of Brittany Diane Tamez, G.P. Matherne as Administrator of the Estate of Ramon A. Tamez, Margaret Bohannon and R.L., Appellants,**

**v.**

**CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, INTERNATIONAL ACCIDENT FACILITIES, INC., Ronald H. Seaborg, National Convenience Stores, Inc., Appellees.**

**No. 14–96–1484–CV**

Court of Appeals of Texas,
Houston (14th Dist.).

Dec. 17, 1998.

Opinion Overruling Rehearing
Aug. 26, 1999.

Scott M. Clearman, Michael D. Myers, Houston, for appellants.

Dan K. Horn, David C. Colley, Irving, Jeff Joyce, Jon L. Johnson, Ann Ryan Robertson, Raymond Matthews, Houston, for appellees.

Before Chief Justice MURPHY and Justices HUDSON and DRAUGHN.*

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

This is an appeal from a summary judgment in appellants' suit seeking damages and proceeds from an insurance policy obtained by National Convenience Stores, Inc. on the lives of its officers and employees. In a single point of error, appellants claim the trial court erred in granting appellees' motions for summary judgment and in denying appellants' motion for partial summary judgment. We affirm in part and reverse and remand in part.

* Senior Justice Joe L. Draughn, sitting by assignment.

**Facts**

Appellants are the families of Ramon Tamez and Cheryl McCarty, both deceased. Tamez and McCarty were employees of appellee, National Convenience Stores, Inc.(NCS), the owners of Stop–n–Go stores. Tamez was killed while in the course and scope of employment at NCS convenience stores. Whether McCarty also died while in the course and scope of employment is in dispute. In 1991, NCS purchased an accidental death insurance policy from appellee, Lloyd's, through its broker, appellee, Ronald Seaborg, and Seaborg's company, appellee, International Accident Facilities, Inc. (IAF). The policy, effective from 7/9/91 to 7/9/93, provided that Lloyd's would pay NCS $250,000 upon the accidental death of any NCS Texas employee killed during the course and scope of employment with NCS. NCS was not a worker's compensation subscriber.

After Tamez's death, NCS submitted a claim and was paid $250,000 in proceeds. NCS also submitted a claim after McCarty's death and received the benefits, but NCS voluntarily returned those proceeds, stating in their briefs that McCarty was not acting in the course and scope of employment at the time of her death. The representatives of Tamez and McCarty filed suit against Lloyd's, IAF, and Seaborg to recover the policy benefits. Appellants claimed breach of contract, breach of the duty of good faith and fair dealing, conspiracy, conversion, and violation of the Texas Insurance Code. Appellants subsequently sued NCS, alleging NCS held the policy proceeds in a constructive trust for appellants' benefit.

Appellants filed a motion for partial summary judgment, asking the court to find appellants were entitled to the policy proceeds. Appellees filed counter-motions for summary judgment, all alleging NCS had an insurable interest in the lives of its employees and was entitled to the proceeds as a proper beneficiary. The trial court entered three orders granting each of appellees' motions for summary judgment and denying appellants' motion. Although the orders did not state the bases for the rulings, the trial judge sent a letter to all counsel explaining his rulings.

In their sole point of error, appellants challenge the grant of appellees' motions for summary judgment and the denial of appellants' motion for partial summary judgment. Under this broad point of error, appellants raise three arguments: (1) NCS had no insurable interest; (2) appellants were the only lawful beneficiaries; and (3) appellants were entitled to the policy benefits based on their dependent claims of conspiracy, conversion, breach of contract, breach of the duty of good faith and fair dealing, and constructive trust.

We turn first to appellees' challenge to appellants' standing to claim NCS lacks an insurable interest.

**Standing**

■ Appellees, NCS and Lloyd's, argued in their motions for summary judgment, and argue on appeal, that appellants have no standing to challenge NCS's insurable interest. Citing the treatise, *Couch on Insurance,* appellees insist it is well-settled that only the insurer can challenge the existence of an insurable interest. 3 Couch on Insurance 3d § 41:5 (1995). Appellants, on the other hand, claim that many Texas cases indicate any interested party has standing to raise the issue of lack of an insurable interest. The cases appellants cite include *Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855 (Tex.1979), *McBride v. Clayton,* 140 Tex. 71, 166 S.W.2d 125 (Tex.Comm.App.1942), *Drane v. Jefferson Standard Life Ins. Co.,* 139 Tex. 101, 161 S.W.2d 1057 (Tex.Comm. App.1942), *Scherer v. Wahlstrom,* 318 S.W.2d 456 (Tex.Civ.App.—Fort Worth 1958, writ ref'd), and *Covington v. Covington,* 271 S.W.2d 849 (Tex.Civ.App.—Dallas 1954, no writ). Our review of these cases reveals that none discuss standing, presumably because no one challenged standing. Therefore, these cases do not directly support appellants' position.

Although we have located no Texas cases specifically addressing the issue of standing, there are cases discussing the rights and duties of parties at the time policy benefits are payable. *See, e.g., Wilke v. Finn,* 39 S.W.2d 836 (Tex.Comm. App.1931). In *Wilke,* the court stated:

> When an insurance company has issued a policy upon the life of a person, payable to one who has no insurable interest in the life insured, or when a policy has been assigned to one having no such interest, the insurance company must nevertheless pay the full amount of the policy, if otherwise liable, because it has so contracted; and it is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper parties, under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties.

*Id.* at 838. The *Wilke* court further stated that a person with no insurable interest will hold the proceeds of the policy as trustee for the benefit of those persons entitled by law to receive it. *Id.* at 837.

A majority of state courts have held that only the insurer can raise the objection of lack of insurable interest. *See* Couch on Insurance 3D § 41.5 n. 37 (1995). For example, a Michigan court of appeals addressed the issue of standing to complain about an employer's insurable interest in the lives of its employees in *Secor v. Pioneer Foundry Co., Inc.,* 20 Mich.App. 30, 173 N.W.2d 780 (1969). In *Secor,* the widow sued to recover the proceeds of an ordinary life insurance policy on the decedent's life which were paid to his former employer. 173 N.W.2d at 781. The company obtained a $50,000 life insurance policy on the decedent when he began employment and the company was the beneficiary of the policy. *Id.* After the decedent terminated his employment, the company paid another annual premium on this policy and one month later, the former employee died. *Id.* The widow claimed the company lost whatever insurable interest it had in the decedent's life when employment terminated and that a constructive trust should be impressed on the proceeds in favor of the widow and the estate. *Id.* The court found that the insurer alone had standing to challenge a policy beneficiary's insurable interest. *Id.*

Texas cases do not look to whether the beneficiary actually brought on the death of the insured, they base their decisions on public policy. For example, in *Wilke,* the court restated the rule that it is against public policy to enforce a contract which makes it in the interest of a person to bring about the death of another. *Wilke,* 39 S.W.2d at 838. Although the insured in *Wilke* did not contribute to the insured's death, the court found that the beneficiary had no insurable interest in the insured, and therefore, was not entitled to the policy proceeds. *Id.* at 839 ("Because Fred Wilke, the beneficiary, was not related by blood or marriage to the insured, and had no interest in the policy and no claim thereto, except the naked fact that he was named beneficiary, and had no reasonable expectation of pecuniary benefit or advantage from the continued life of the insured, he had no insurable interest in the life of Herman Finn, deceased, and the trial court erred in awarding him judgment on the policy as against the administrator.").

Despite the holding of a majority of other state courts to the contrary, we find it more equitable to follow the procedure described in *Wilke.* When issuing a policy, the insurer is aware the designated beneficiary differs from the insured and nonetheless agrees to pay a set amount under certain conditions. Once the policy has issued and the premiums have been paid, it would be inequitable for an insurer, at that late date, to attempt to escape its contract by claiming the beneficiary had no insurable interest. If the insurance company disputes the existence of an insurable interest, it is more reasonable for the insurer to ascertain the existence of an insurable interest before agreeing to issue the policy. If the insurance company is-

sues the policy, then, regardless of whether there is an insurable interest, the insurer should have to pay the proceeds to the beneficiary. *See Cheeves v. Anders,* 87 Tex. 287, 28 S.W. 274, (1894).[1] If the estate alleges the beneficiary receiving those proceeds had no insurable interest in the deceased; the estate should be able to challenge the beneficiary's right to retain those proceeds.[2]

As a consequence, we find that appellants have standing to seek the policy proceeds. It is irrelevant to the issue of standing whether NCS voluntarily returned the proceeds to the insurance company. Those appellants related to McCarty should be allowed to establish, if possible, the policy condition imposing liability for payment of proceeds only upon the death of an employee who was in the course and scope of employment.

Because we hold appellants have standing to challenge the existence of an insurable interest, we turn to the question whether NCS has an insurable interest in the policy proceeds.

**Insurable Interest**

Appellants contend a long line of Texas cases require an insurance beneficiary to possess an insurable interest in the insured's life and that appellees do not meet the test regarding who has an insurable interest. NCS first argues that the Texas Insurance Code does not require an insurable interest. Alternatively, NCS claims it has an insurable interest in the lives of its employees.

1. In *Cheeves*, an insurance policy was obtained by a partnership on the life of Chilton, a partner in the firm, for & 10,000. 28 S.W.at 275. The firm paid the premiums. *Id.*When Chilton died, the administrator of Chilton's estate sued the other partner, Cheeves, and the insurance company to recover the amount of the policy. *Id.* Because the partnership had dissolved and the policy had been transferred to Chilton before his death, the administrator claimed the estate was entitled to the proceeds. *Id.* The supreme court held that the former partner had lost an insurable interest in Chilton when the firm dissolved, and the estate was entitled to the proceeds. *Id.* The supreme court further stated:

> When an insurance company has issued a policy upon the life of a person payable to one who has no insurable interest in the life insured, ... the insurance company must nevertheless pay the full amount of the policy, if otherwise liable, because it has so contracted; and it is no concern of the insurer as to who gets the proceeds, except to see that it is paid to the proper parties, under its agreement. It is simply required to perform its contract, and the law will dispose of the money according to the rights of the parties. This rule does no wrong to the insurance company. It, having agreed to pay the money upon the death of a named person, ought not to be permitted to avoid liability upon its contract upon the ground that it has made an unlawful agreement, when that contract can be enforced in favor of a person who is in no wise concerned in the unlawful part of the transaction. It is held by the courts of this and other states that when one secures a policy upon his own life, and transfers it to another, who has no insurable interest, the want of insurable interest cannot be set up as a defense by the insurance company; the policy ... is not void as to the insurance company, but will be enforced. .... If the insurance company may set up the illegality of such a contract, then the object of the law will be frustrated, and the making of such unlawful agreements by insurance companies will be encouraged, for they would thus be enabled to reap the benefits without incurring the risk of such business.

*Id.* at 275–76. Because the partnership had paid the premiums, the court determined that the partnership had the right to be reimbursed, with interest, out of the proceeds for the premiums paid. *Id.* at 276.

2. There are cases holding that the estate can sue the beneficiary regarding his insurable interest. *See Pacific Mut. Life Ins. Co. v. Williams,* 79 Tex. 633, 15 S.W. 478, 480 (1891). A South Carolina court has even held that the estate should have a claim against the insurance company, not for paying proceeds, but for issuing a policy to a beneficiary who had no insurable interest in the insured on the ground the insurance company had a duty to exercise reasonable care not to injure another and that issuing such a policy was "opening a wide door by which a constant temptation is created to commit for profit the most atrocious of crimes." *Ramey v. Carolina Life Ins. Co.,* 244 S.C. 16, 135 S.E.2d 362, 366–67 (1964).

In support of its argument that the Insurance Code does not require an insurable interest, NCS cites to article 3.49–1, § 4, which provides for liberal construction of the act and instructs that the provisions of the act are "not to be limited or restricted by previous declarations or holdings of the Courts of Texas defining the term insurable interest." Tex. Ins.Code Ann. Art. 3.49–1, § 4 (Vernon 1981). Section 4 also provides that the act is "cumulative of existing law in Texas, statutory or otherwise, on the question of insurable interest." *Id.*[3]

Article 3.49–1 was added in 1953. Although the first sentence of section 4 intimates that the only limitations on insurable interest are those found in the statute, case law has not so interpreted it. *See, e.g., Empire Life Ins. Co. v. Moody,* 584 S.W.2d 855 (Tex.1979). In *Moody,* the court referred to the definitions of insurable interest applied by the courts before the addition of article 3.49–1. *Id.* at 859 (citing *Drane v. Jefferson Standard Life Ins. Co.,* 139 Tex. 101, 161 S.W.2d 1057 (Tex.Comm.App.1942)).

In *Drane,* the supreme court observed that those having an insurable interest in the life of another generally fall into three classes: "(1) one so closely related by blood or affinity that he wants the other to continue to live, irrespective of monetary considerations, (2) a creditor, and (3) one having a reasonable expectation of pecuniary benefit or advantage from the continued life of another." *Id.* at 1058–59. In *Drane,* as in this case, the court was confronting a case falling under the third category. *Id.* at 1059. The court further explained this category as follows:

> Bluntly expressed, insurable interest, under [the third] classification, is determined by monetary considerations, viewed from the standpoint of the beneficiary. Would he regard himself as better off from the standpoint of money, would he enjoy more substantial economic returns should the insured continue to live; or would he have more, in the form of the proceeds of the policy, should she die? Therefore it is said that if the situation is such that he might be led to conclude that he would profit by her death, the policy contract is void as to him since the public has a controlling concern that no person have an interest in the early death of another, an interest that may give rise to a temptation to destroy her life.

*Id.* (citations omitted). The court further asserted that, in determining insurable interest, each case must depend for its solution upon its particular facts. *Id.*

Some courts, however, have found article 3.49–1 to be a change in the law with respect to insurable interests. In *Henry v. Lincoln Income Life Ins. Co.,* 405 S.W.2d 167, 169 (Tex.Civ.App.—Fort Worth 1966, no writ), the court cited to section four of the amended code and held "[i]t is not against public policy for a person with no insurable interest to be named beneficiary." *See also In re Group Life Ins. Proceeds of Mallory,* 872 S.W.2d 800 (Tex.App.—Amarillo 1994, no writ)(under the Texas Insurance Code, named beneficiaries are deemed to have an insurable interest in the life of the insured); *Oates v. Hodge,* 713 S.W.2d 361 (Tex.App.—Dallas 1986, no writ)(citing to Texas Insurance Code art 3.49–1, sec. 1 for the proposition that any person designated as beneficiary has insurable interest in the life of the insured); *Kennedy v. Laird,* 503 S.W.2d 664 (Tex.Civ.App.—Houston [1 st Dist.] 1973, no writ)(observing that prior to enactment of art. 3.49–1, Texas was the only state not allowing an insured to name any beneficiary he chose and stating that pub-

3. Sections 2 and 3 allow an applicant for insurance on his own life to name anyone as a beneficiary and those beneficiaries so designated will then be deemed to have an insurable interest. Tex. Ins.Code Ann. Art. 3.49–1, §§ 2–3 (Vernon 1981). These provisions do not apply here because the insured persons did not apply for the insurance and did not designate NCS as their beneficiaries.

lic policies underlying prior statute are no longer realistic or necessary).

Other courts have continued to apply prior case law regarding insurable interest. *See Moody,* 584 S.W.2d at 859 (although not addressing the issue of insurable interest, supreme court cites to three classes of persons with insurable interest in the life of another as discussed in *Drane* ); *United Benefit Life Ins. Co. v. Boyd,* 453 S.W.2d 332 (Tex.Civ.App.—El Paso 1970)(observes that the supreme court in *McCain v. Yost,* 155 Tex. 174, 284 S.W.2d 898 (1955)), *writ ref'd n.r.e.,* 457 S.W.2d 893 (Tex.1970) refused to answer the question whether public policy of the state had been changed after passage of art. 3.49–1 and holds that, if the new statute did change the law regarding insurable interest as it affects adults, it did not change the law with respect to minors.

The instant case does not appear to fall within any of the statutory sections regarding insurable interest because NCS applied for the insurance, insured against the accidental death of its employees, and designated itself as beneficiary. This unusual fact pattern is discussed in section 41.21 of COUCH ON INSURANCE 3D:

> In the absence of any proof to the contrary, it is presumed that a person who applies for and obtains insurance on his or her own life is in fact the insured. It may be shown, however, that the insured was in fact merely a nominal party and that the application was instigated and the premiums paid by the beneficiary who had no insurable interest in the life of the insured. In such case, the policy will be held void if under the applicable law it would have been void had the beneficiary applied as the insured.

Under the circumstances we have in this case, case law regarding insurable interest is applicable because the statute does not address it. Case law holds there are three classes of beneficiaries with an insurable interest in the life of the insured. The only classification that applies to NCS is whether it has a reasonable expectation of pecuniary benefit or advantage from the continued life of its employees. NCS argues it does have an expectation of pecuniary benefit in that "[w]ithout employees, NCS would not generate revenue and would cease to exist as a viable entity." NCS claims this is a fact of such common knowledge that a court may take judicial notice of it. While it may be true that NCS, like any other company, needs employees to generate revenue, NCS does not dispute that the basis for purchasing this insurance was to pay any benefits to the families of the deceased and to pay for costs associated with defending a lawsuit. In any event, most cases addressing this issue have found that an employer does not have a pecuniary interest in the continued life of its employee, unless that employee is crucial to the operation of the business. *See* COUCH ON INSURANCE 3D § 43:13 (1995)(citing *Wagner v. G. Gaudig & Blum Corp.,* 223 A.D. 254, 228 N.Y.S. 139 (1928)(where the crucial employee was a general manager)).[4]

NCS raises an alternative argument, and one also raised by the other appellees, that NCS has an insurable interest because it sustains a substantial pecuniary *loss* upon the death of an employee in the form of funds paid to the families and expenses for potential liability in litigation. Although no Texas cases hold that the risk of pecuniary loss is an insurable interest, Kentucky recognized risk of loss as an insurable interest in *Amalgamated Labor Life Ins. Co. v. Rowe,* 421 S.W.2d 364

4. Texas law does allow an employer to benefit from "key-man" insurance. Article 3.49 specifically allows a corporation to be named as beneficiary of a policy of insurance on the "life of any officer or stockholder of said corporation." TEX. INS.CODE ANN. Art. 3.49 (Vernon 1981). This statute expressly provides the corporation with an insurable interest in the proceeds of such a policy. *Id.* This statute, however, is inapplicable to the instant case.

(Ky.1967). *Rowe* is very similar to the instant case, but it has been superseded by statute. Appellants observe that the holding in *Rowe* is contrary to current Kentucky statutory law regarding insurable interests and has never been cited in a published opinion since it was issued. Indeed, the current Kentucky statute provides that an employer may procure insurance upon the life of an employee if: (1) the insurance is for the purpose of funding a pension or other benefit plan for the employee; or (2) the employer has a lawful and substantial economic interest in having the life of the individual insured continue, rather than an interest that would arise only upon the death of the insured. Ky. Rev.Stat. Ann. § 304.14–040(1), (4) (Baldwin 1997). Thus, we are unpersuaded to follow the holding in *Rowe.*

If an employer does not subscribe to the worker's compensation scheme, they are responsible for costs associated with potential liability. It is reasonable for employers to be able to procure some type of liability insurance. On the other hand, case law holds that an insurance policy is void as to a beneficiary who has no pecuniary interest in the continued life of the insured.[5] *See Drane,* 161 S.W.2d at 1059. Appellees argue that NCS is not profiting from the decedent's death, but is using the proceeds to pay benefits and defend against potential liability. Reimbursement of costs associated with defending against possible liability is, however, a benefit to NCS. As appellants argue, NCS would recover the proceeds whether or not it is liable for damages and regardless of the amount of loss.

Based on our review of the case law, we conclude that NCS has no insurable interest in the life of its employees. Therefore this policy is void as to NCS.

**Proper Beneficiaries under the Insurance Code**

Appellants also argue that, under the Insurance Code, appellants are the only proper beneficiaries. Appellees disagree, asserting this insurance was proper blanket accident insurance under article 3.51–6, § 2(a)(2) and that the statutes regarding blanket insurance allow an employer to designate itself as the beneficiary of the policy.

Article 3.51–6, § 2(a)(2) provides:

> (a) Blanket accident and health insurance is hereby defined to be that form of accident, health, or accident and health insurance covering groups of persons as provided in (1) through (9) below:
>
> . . . .
>
> (2) under a policy issued to an employer, who shall be deemed the policyholder, covering any group of employees, dependents, or guests, defined by reference to specified hazards incident to an activity or activities or operations of the policyholder;

Tex. Ins.Code Ann. art. 3.51–6 § 2(a)(2) (Vernon 1981).

We dispute appellees' assertion that the policy in question is proper blanket insurance. First, blanket insurance differs from group insurance in that blanket insurance covers employees "by reference to specified hazards incident to an activity or activities or operations" of the employer. *See* Tex. Ins.Code Ann. art. 3.51–6 § 2(a)(2). The policy issued to NCS specifically states it is "Group Personal Accidental Death Insurance" that covers "Insured Persons while engaged in his or her occupation for the Assured." While we recognize that the title reference to "group" insurance is not determinative, we do not construe insurance that covers employees while they are engaged in their occupation to be coverage of a specified hazard incident to their employment.

Furthermore, another section of the statute conflicts with appellees' argument. Section 3 concerns payment of ben-

5. Case law holds that, if the beneficiary has no insurable interest, the policy is void as to him. *See Drane,* 161 S.W.2d at 1059. The cases do not hold that the policy itself is void.

efits under a group or blanket policy and provides in pertinent part:

> All benefits under any group or blanket accident and sickness policy shall be payable to the person insured, or to his designated beneficiary or beneficiaries, or to his estate, except that if the person insured be a minor or otherwise not competent to give a valid release, such benefits may be made payable to his parent, guardian, or other person actually supporting him.

TEX. INS.CODE ANN. art. 3.51–6, § 2(a)(2) (Vernon 1981).

This section states that benefits are payable to the person insured, which would be the employee in this case, or to *his* designated beneficiary or estate. Certainly, the provisions regarding blanket accident insurance do not prohibit the benefits from blanket accident insurance from flowing to the employer, but section 3 requires the insured to make the designation of his employer as beneficiary. In our case, the employees did not designate their beneficiaries. Instead, the policyholder, NCS, designated itself as the beneficiary.

Appellees argue NCS is the person insured because the policy defines "insured person" as "any officer or employee of the assured [NCS]." We find this argument without merit. The officers and employees of NCS are the persons insured under the policy. The purchaser and beneficiary of the policy is the corporate employer, NCS. The policy states that it is a group personal accidental death insurance that covers the "insured *persons* " while they are engaged in their occupations for NCS. Thus, NCS, as a corporate entity is not the insured person.

■ Appellees further contend that the statute regarding blanket policies allows NCS to procure insurance on the life of their employees and to recover the proceeds as the insured because there is no specific limitation disallowing employers from benefitting from the proceeds of blanket policies. They support this argument by citing to the statute regarding group insurance, which contains a specific prohibition against the employer obtaining the benefits from this insurance:

> Group accident and health insurance is hereby defined to be that form of accident, sickness, or accident and sickness insurance covering groups of persons as provided in Subdivisions (1) through (6) below:
>
> (1) under a policy issued to an employer or trustees of a fund established by an employer, who shall be deemed the policyholder, insuring employees of such employer *for the benefit of persons other than the employer.*

TEX. INS.CODE ANN. art. 3.51–6, § 1(a)(1) (Vernon Supp.1998)(emphasis added).

The statute concerning blanket insurance contains no specific limitation against an employer benefitting from the insurance, but the portion of the statute explaining payment of benefits applies to both group and blanket accident policies and this section specifically provides that all benefits are payable to the person insured or to his designated beneficiary. TEX. INS.CODE ANN. art. 3.51–6, § 3. NCS counters that if an employer or other "nonperson" cannot be the beneficiary of blanket insurance then the legislature did a useless thing in section 2 by prohibiting employers from benefitting from group insurance on their employees.

We agree that article 3.51–6 contains inconsistencies. Section 2, regarding blanket insurance, does not specifically prohibit employers from benefitting from the insurance, but section 3, regarding payment of benefits, impliedly does prohibit employers from benefitting in that it provides for payment of proceeds to the *person* insured or to *his* designated beneficiary. Because we find that the policy is group accident insurance, and not blanket insurance, we need not address the inconsistencies between sections 2 and 3 of article 3.51–6. Under article 3.51–6, § 2, group insurance must be for the benefit of persons other than the employer. Because NCS recov-

ered benefits from this policy in violation of the Insurance Code, the trial court erred in granting summary judgment in favor of NCS and in denying appellants' motion for partial summary judgment.

**Appellants' Claims for Relief**

Appellants contend the trial court erred in granting summary judgment to appellees on appellants' dependent claims of conspiracy, conversion, breach of contract, breach of the duty of good faith and fair dealing, and constructive trust.

**(1) Breach of Duty of Good Faith and Fair Dealing**

Appellants originally alleged the claim of breach of duty of good faith and fair dealing against appellees, IAF, Lloyd's, and Seaborg. The trial court granted partial summary judgment in favor of IAF and Seaborg on this claim. Appellants subsequently amended its petition, dropping this claim against IAF and Seaborg. Thus, we address this claim only as against Lloyd's.

Lloyd's moved for summary judgment on this claim, asserting that NCS had an insurable interest in the lives of Tamez and McCarty and that the policy proceeds were properly payable to NCS. Therefore, Lloyd's contended appellants were mere third-party claimants with no standing to assert breach of the duty of good faith and fair dealing.

An insurer owes its insured a duty of good faith and fair dealing because of the special relationship arising out of the insurance contract. *Aranda v. Ins. Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex. 1988). Accordingly, only the insured has standing to sue its insurer for breach of the duty of good faith and fair dealing. *PG. Bell Co. v. United States Fidelity and Guaranty Co.,* 853 S.W.2d 187, 190 (Tex. App.—Corpus Christi 1993, no writ). The supreme court has held that an insurer's duty of good faith and fair dealing does not extend to third-party claimants. *Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 279–80 (Tex.1995).

There is no relationship between Lloyd's and appellants giving rise to the duty of good faith and fair dealing. There was no contractual relationship between appellants and Lloyd's. Although we have held that the rightful beneficiaries of the policy proceeds are appellants, we do not believe this holding extends the duty of good faith and fair dealing to appellants. Accordingly, we uphold the trial court's grant of summary judgment in favor of appellees on this claim.

**(2) Conspiracy, Conversion, Breach of Contract**

In their motions for summary judgment, appellees argued they were entitled to summary judgment on appellants' claims of conversion, conspiracy, and breach of contract because the policy was lawful and NCS was the proper beneficiary. Because we have held the policy violates the insurance code and NCS is not the proper beneficiary of the policy, we sustain appellants' claim that the trial court improperly granted summary judgment on these grounds.

**(3) Article 21.21 violations**

Appellees argue appellants are third party claimants under the policy and have no standing to pursue claims under article 21.21 of the Texas Insurance Code. Appellees further argue appellants cannot recover under article 21.21 because there was no reliance on appellees' actions.

Although we have held that NCS is not a proper beneficiary of the policy under the Texas Insurance Code and that NCS has no insurable interest, this holding does not change the legal status of appellants as it concerns their claims under article 21.21. Because the policy reflects only the insurer (Lloyd's), the insureds (NCS employees), and NCS as beneficiary, we must consider appellants third party claimants under the policy. The supreme court has held that a third party claimant lacks standing to bring claims against an insurer under section 16 of article 21.21. *Allstate Ins. Co. v. Watson,* 876 S.W.2d 145, 150

(Tex.1994). Even if appellants could be considered third party beneficiaries, the supreme court has held that a third party beneficiary likewise lacks standing to sue under article 21.21. *Id.* Accordingly, the trial court properly granted summary judgment in favor of appellees on appellants' article 21.21 claims.[6]

**(4) Constructive Trust**

Appellants alleged that, because NCS had no insurable interest and was not a proper beneficiary under the Insurance Code, NCS held the policy proceeds in a constructive trust for appellants. Because we have held that NCS was not a proper beneficiary, the trial court erred in granting summary judgment in favor of NCS on this ground.

**Conclusion**

Having held that NCS has no insurable interest in the lives of its employees and that NCS is not a proper beneficiary under the Insurance Code, we sustain appellants' point of error challenging the grant of summary judgment in favor of appellees on the claims that NCS had no insurable interest and was not a proper beneficiary under the Texas Insurance Code and on appellants' claims of conversion, breach of contract, conspiracy, and constructive trust.

We affirm that portion of the judgment granting summary judgment in favor of appellees on the claims of violations of article 21.21 and breach of the duty of good faith and fair dealing. We reverse the remainder of the trial court's judgment and we remand it to the trial court for further proceedings consistent with this opinion.

**OPINION ON REHEARING**

In their motion for rehearing, National Convenience Stores, Inc. (NCS) raises several complaints, including a challenge to our holding that NCS was not entitled to summary judgment on the claim for a constructive trust. Although we find NCS's complaints meritless, we supplement our original opinion to address NCS's complaint regarding the constructive trust claim.

NCS argues there is not a sufficient basis for imposing a constructive trust because the property cannot be identified. NCS cites *Sheldon Petroleum Co. v. Peirce,* 546 S.W.2d 954 (Tex.Civ.App.—Dallas 1977, no writ) for this proposition. As proof that the property cannot be identified, NCS further claims it paid the proceeds, obtained as a result of the death of Ramon Tamez to his, estate. They further claim they are not in possession of the proceeds paid in connection with the death of Cheryl McCarty as these were returned to the insurance company.

NCS misreads our opinion. We did not hold that NCS held the proceeds in constructive trust. We merely held that, because NCS was not a proper beneficiary, NCS was not entitled to summary judgment on the constructive trust claim. Although NCS claims in the motion for rehearing that they paid the proceeds to the Tamez estate, their brief and their summary judgment proof stated that NCS used that $250,000 for *both* litigation expenses and settlement of certain claims brought by the Tamez estate. Because we found that NCS had no insurable interest and was not a proper beneficiary of the policy, it was improper for NCS to use the policy proceeds to pay their own litigation

6. Seaborg and IAF argue there is no cause of action against an insurance company's employee in his individual capacity. In support of this argument, appellees cite *French v. State Farm Ins. Co.,* 156 F.R.D. 159 (S.D.Tex. 1994). The Texas supreme court, however, has recently interpreted section 2(a) of article 21.21 to apply to an insurance company employee. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.,* 966 S.W.2d 482, 487 (Tex. 1998). The court held that "person" as defined in article 21.21 includes employees who engage in the business of insurance. *Id.* at 486.

expenses and to settle claims. Therefore, we held that summary judgment in favor of NCS on the constructive trust claim was improper.

In *Sheldon,* the case cited by NCS, the plaintiff sought a constructive trust placed on certain funds she had given to a petroleum company for the "promotion and financing of Texas 'oil deals'." 546 S.W.2d at 958–59. The court first observed that, to impose a constructive trust, a plaintiff must show that retention of specific property by the defendant would constitute unjust enrichment. *See id.* at 958. The court explained, "[the plaintiff] must be able to show what property he is entitled to have." *See id.* The court added that it is "inequitable to place the burden of tracing on the party asserting the trust where the constructive trustee has wrongfully commingled his own funds or property with funds or property against which a trust is asserted, especially where the proof necessary to separate the funds is peculiarly within the knowledge and possession of the trustee." *Id.* In such a case, the trustee must establish which property is his or the entire fund is considered to be subject to the trust. *See id.* In *Sheldon,* the plaintiff could not show that the funds she sought had been commingled and, therefore, could not establish her cause of action. *See id.* at 959.

Regarding the Tamez funds, NCS admitted in the trial court that it had used the policy proceeds to pay certain debts, including litigation expenses and settlement with the Tamez family. The placement of the proceeds into an account from which NCS could pay its debts raises a fact issue regarding the constructive trust claim. As the *Sheldon* court stated, it would be inequitable to place the burden of tracing all of the proceeds on the Tamez family where the proof necessary to separate funds is peculiarly within the knowledge and possession of NCS. 546 S.W.2d at 958. Furthermore, we are not persuaded that a constructive trust is inappropriate as a matter of law based on NCS' claim it has already spent the proceeds. Given our holding that NCS was not entitled to these proceeds, the proceeds were not NCS's to spend, regardless of who NCS paid.

NCS also challenges our holding regarding the remedy of constructive trust in connection with the McCarty proceeds. Again, NCS misconstrues our opinion. We held that the trial court erred in granting summary judgment in favor of NCS on the ground of constructive trust. We did not hold that the McCarty estate was entitled to a constructive trust. The Eighth Amended Original Petition pled for constructive trust relief only on behalf of the Tamez estate for the Tamez proceeds. Thus, there was no claim of constructive trust for the McCarty proceeds and our holding on the constructive trust claim should not be construed to apply to the McCarty proceeds.

Accordingly, we overrule NCS's motion for rehearing.