United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 02-21059
_____

SCOTT MAYO; ET AL.,

Plaintiffs,

DOUGLAS SIMS, by Deborah Sims, the independent executrix,

Plaintiff - Appellee,

versus

HARTFORD LIFE INSURANCE COMPANY; ET AL.,

Defendants,

WAL-MART STORES, INC.; WAL-MART STORES
INCORPRATED CORPORATION GRANTOR TRUST;
WACHOVIA BANK OF GEORGIA, N.A.,

Defendants - Appellants.
_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-01-CV-2139
_____

Before JOLLY, SMITH, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Wal-Mart Stores, Inc. ("Wal-Mart") took out life insurance on

its employees and made itself the beneficiary. This interlocutory

appeal arises from a grant of partial summary judgment involving a

dispute over death benefits from one of these company-owned life

insurance ("COLI") policies. Douglas Sims' estate sued Wal-Mart on

the ground that the COLI policy taken out in Sims' name violated

the Texas insurable interest doctrine. We hold that: 1) Texas law, which requires an "insurable interest" for valid life insurance policies, governs the dispute; 2) an employer has no insurable interest in an ordinary employee under Texas law; and 3) Wal-Mart failed to establish its affirmative defense that the estate's claims were barred by limitations. In so holding, we affirm the district court's denial of summary judgment for Wal-Mart and affirm its grant of partial summary judgment for the Sims estate.

I

In 1993, Wal-Mart established a trust to serve as the legal holder of life insurance policies insuring the lives of its employees and naming itself as beneficiary. The instrument establishing the trust provided that Georgia law would govern the trust's construction, validity, and administration, and named Wachovia Bank of Georgia, N.A. ("Wachovia") as trustee. Wal-Mart acted in pursuit of tax benefits related to the deductibility of premium payments, and was only one of many similarly situated companies which took this course of action. After Congress and the IRS eliminated the tax advantages of Wal-Mart's COLI program, Wal-Mart unwound the otherwise unprofitable program, surrendering the last of its policies by 2000.

Wal-Mart's COLI policies insured the lives of all employees (also called "associates") with service time sufficient for enrollment in the Wal-Mart Associates' Health and Welfare Plan,

2

unless those associates elected not to participate in a special death benefit program that Wal-Mart introduced in conjunction with the COLI program. Fewer than one percent of the 350,000 eligible employees opted out of the program, which was discontinued by early 1998. Wal-Mart's COLI program was intended to be "mortality neutral," such that the death benefits paid to Wal-Mart upon its associates' deaths would fund employee benefit plans and death expenses, or otherwise be repaid to the insurer as self-correcting "cost of insurance" adjustments.

Douglas Sims was a Wal-Mart associate from May 1987 until his death on December 1, 1998, and was insured under a COLI policy from December 21, 1993 until his death (though the special death benefit program had been discontinued prior to Sims' death). On June 28, 2001, after his estate discovered the existence of this policy, it sued Wal-Mart, alleging a violation of the Texas insurable interest doctrine. The estate sought, in relevant part, a declaratory judgment of its rights under Sims' COLI policy, the imposition of a constructive trust on the policy benefits, and disgorgement of the money Wal-Mart unjustly received at some point in 1999.

Wal-Mart moved for summary judgment on the grounds that, in relevant part, Georgia law applies (and thus Sims has no claim) and, in the alternative, the Texas statute of limitations bars Sims' claim. After the district court denied this motion, Wal-Mart moved for reconsideration, renewing its choice of law argument and adding that recent developments in Texas law placed doubt on the

3

public policy underlying the state's insurable interest doctrine. Sims then filed a motion for partial summary judgment, seeking a declaration that Wal-Mart lacked an insurable interest in Sims' life. Wal-Mart responded with a cross-motion for summary judgment, arguing that Wal-Mart had an insurable interest in Sims.

The district court granted Wal-Mart's motion for reconsideration, but again denied summary judgment on all grounds in an amended opinion. The court then granted partial summary judgment in favor of Sims, but certified its order under 28 U.S.C. § 1292(b) for interlocutory appeal on the following issues: (1) which state's substantive law applies to Sims' claims; (2) whether Wal-Mart has an insurable interest in Sims' life; and (3) whether the statute of limitations bars Sims' claims. This court granted Wal-Mart leave to appeal the district court order.

## II

This court reviews grants or denials of summary judgment de novo, applying the same legal standards as the district court. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). The issues we will address are: 1) the choice of which state's law to apply; 2) an analysis of the Texas insurable interest doctrine as it applies to this case; and 3) the applicable statute of limitations. We take these up in order.

## A

First, Wal-Mart contends that the district court erred in applying the substantive law of Texas rather than Georgia to the

4

parties' dispute.  This court reviews <u>de novo</u> a district court's choice of law determination.  <u>In re Air Disaster at Ramstein Air Base, Germany</u>, 81 F.3d 570, 576 (5th Cir. 1996).

In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state, here Texas.  <u>Klaxon v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>see</u> <u>also</u> <u>Spence v. Glock, Ges.m.b.H.</u>, 227 F.3d 308, 311 (5th Cir. 2000).  Texas courts use the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws (1971) for all choice of law cases except contract cases in which the parties have agreed to a valid choice of law clause.  <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414, 420-21 (Tex. 1984).  As the district court correctly noted, neither Sims nor Wal-Mart asserts that a statutory directive governs the choice of law determination here, and neither have they agreed on which state's law to apply (the trust instrument's invocation of Georgia law being of no moment because Sims was not a party to that contract), so this Court applies the Restatement's fact-based analysis.  <u>Id</u>.; <u>Maxus Exploration Co. v. Moran Bros., Inc.</u>, 817 S.W.2d 50, 53-54 (Tex. 1991).

Section 6 of the Restatement lists several general factors to be used by courts in making choice of law determinations:

> a) the needs of the interstate and international systems;
> b) the relevant policies of the forum;
> c) the relevant policies of other interested states and the relative interests of

5

those states in the determination of the particular issue;
d) the protection of justified expectations;
e) the basic policies underlying the particular field of law;
f) certainty, predictability, and uniformity of result; and
g) ease in determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2) (1971). The district court thoroughly and conscientiously analyzed each § 6 factor as it applies to this case. We have little to add to this analysis, only emphasizing that Sims' claim centers on an alleged violation of the Texas insurable interest doctrine (as it has evolved via common law and legislative guidance), and that Texas' interest in seeing its policy correctly applied far overwhelms any other consideration.

Further, while the Restatement does not provide a specific analytical schemata for determining insurable interest claims, it does address choice of law analyses for various kinds of disputes that can be analogized to this one. These later sections demonstrate the concrete application of the "most significant relationship" test, and all incorporate § 6 as the starting point for any such analysis. Of potential relevance here are: § 145, governing issues in tort; § 188, governing contract disputes; § 192, governing certain life insurance contracts; and § 221, governing claims for unjust enrichment.

Wal-Mart frames the issue in this case as a contractual dispute, and accordingly argues that § 188 should guide this Court's choice of law analysis. Section 188 provides that "[t]he

6

rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties[.]" RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971). The § 188 inquiry is directed at unearthing and upholding contracting parties' intent as to the governing law.

As Sims and the district court point out, however, this case does not involve a dispute over the "rights and duties of parties" to a contract. Instead, this case involves the application of Texas' common law on insurable interests in the context of an insurance contract *to which Sims was not a party*. Section 188's focus on vindicating the intent of contracting parties, and on balancing factors surrounding the negotiation and finalization of their agreement, simply does not resound in this dispute. That is, properly framed, the contracts between Wal-Mart and its insurer are only tangentially related to the particular substantive issue before the court, and there is no dispute over the contracting parties' obligations. A § 188 analysis, even one as ably performed as the district court's was, thus seems inapposite.

An alternative approach, that neither party nor the district court considered, is to view Sims' claim as one involving a tortious act akin to conversion, or the wrongful -- because allegedly violating the insurable interest doctrine -- taking of the property of another. Section 145 lists the following contacts

7

to be taken into account in applying § 6 principles:  the place where the injury occurred, the place where the conduct causing the injury occurred, the domicile of the parties, and the place where the relationship between the parties was centered.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971).

The parties "reside" in Texas (Wal-Mart by place of business) and the employment relationship was also wholly in Texas.  The injury and the conduct causing it took place either in Texas or Georgia (or both), depending on whether one considers the injury to be the misappropriation of money, the insuring of a non-insurable interest, or some other construction of the relevant events.  The plurality of factors favor the application of Texas law, particularly given that courts evaluate such contacts for their quality, not their quantity[1] -- and that all of the factors must be considered in the light of § 6.

Sims contends that § 221 provides the best guidance, as this section "applies to claims, which are based neither on contract nor on tort, to recover for unjust enrichment."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 221, cmt. a (1971).  This view appears to be a plausible interpretation of the claim.  Section 221, after reiterating the importance of the § 6 factors, adds the following unjust-enrichment-specific factors:  the place where a relationship between the parties was centered, the place where the enrichment

---

[1]See Gutierrez v. Collins, 583 S.W.2d 312, 319 (Tex. 1979).

was received, the place where the act conferring the enrichment was done, the domicile of the parties, and the place where a physical thing related to the enrichment was situated during the time of the enrichment.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 221 (1971).

Sims lived in Texas and was employed by Wal-Mart in Texas. The enrichment was conferred and received in either Georgia or Texas (depending on how one characterizes the triggering event, Sims' death, as well as the flow of death benefits).  The "thing" related to the alleged enrichment -- and the crux of the insurable interest dispute -- was (if anything) Sims' life, which was also, of course, in Texas.  If Sims' claim is for unjust enrichment, or if § 221 otherwise applies, then the relevant factors favor Texas.[2]

Finally, § 192 specifies the choice of law analysis in cases involving life insurance contracts, but only those *that have been issued to the insured upon his application*.  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 192, cmt. a (1971).  Although not wholly on point, this provision does offer some guidance.  It reads in its entirety:

> The validity of a life insurance contract
> issued to the insured upon his application and
> the rights created thereby are determined, in
> the absence of an effective choice of law by
> the insured in his application, *by the local
> law of the state where the insured was
> domiciled at the time the policy was applied
> for*, unless, with respect to the particular

---

[2]See also Canton v. Leach Corp., 896 F.2d 939, 943 (5th Cir. 1990) ("Texas has a distinct interest in applying its restitution policy to a course of action that enriched [the corporation] at the expense of a Texas citizen.").

9

issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 192 (1971) (emphasis added).

If Sims had taken out the policy, therefore, even if it had been through a Georgia trust, its terms would be governed by Texas law. We fail to see how the fact that Wal-Mart took it out militates against this principle.[3]

In sum, every viable "most significant relationship" analysis performed in following the forum state's choice of law provisions points to the application of Texas law to this case. We thus AFFIRM the district court on this issue.

B

We now apply Texas' insurable interest doctrine. Wal-Mart contends that, even if Texas law applies, the district court erred in determining that its COLI policy violated the Texas insurable interest doctrine. The district court concluded that the policy was void because Wal-Mart lacks a sufficient financial interest in the lives of its rank-and-file employees.

---

[3]Comment a of § 192 also states that the section "does not apply to life insurance issued upon the life of someone other than the applicant; as to such insurance, no more definite rule can be stated . . . than that stated in § 188." As we found earlier, § 188, while clearly applying to a dispute between the parties to the COLI contract, does not help much in the present case. In any event, as the district court found, the § 188 factors also favor Texas law.

For this diversity action, and because the Texas Supreme Court has not ruled on the insurable interest doctrine in the light of a half-century's legislative amendments, the district court was required to make an Erie-guess as to how that court would apply substantive state law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992) ("[I]t is the duty of the federal court to determine as best it can, what the highest court of the state would decide.").

Wal-Mart's motion requesting certification of this question -- whether and how the Texas insurable interest doctrine applies to this case -- to the Texas Supreme Court was carried with the present appeal.  Although the Texas Supreme Court has not recently addressed the insurable interest doctrine, the question is not so complex or opaque as to justify certification.  Further, this Court's familiarity with the doctrine, see discussion infra, and the unambiguous line of Texas lower court decisions, make certification unnecessary.  Accordingly, we DENY the motion to certify.

As such, we review the district court's Erie-guess de novo. Williamson v. Elf Aquitaine, Inc., 138 F.3d 546, 549 (5th Cir. 1998).  In this regard, deference cannot be given to the rulings by the district court, even though it sits in the state whose law is being applied.  Id. (citing Salve Regina College v. Russell, 499

11

U.S. 225, 238 (1991) ("When de novo review is compelled, no form of appellate deference is acceptable.")).

Texas requires a person insuring the life of another to have an insurable interest in the insured person's life. Empire Life Ins. Co. of America v. Moody, 584 S.W.2d 855, 859 (Tex. 1979); Drane v. Jefferson Standard Life Ins. Co., 161 S.W.2d 1057, 1058-59 (Tex. 1942). The state's common law insurable interest doctrine deems that "it is against the public policy of the State of Texas to allow anyone who has no insurable interest to be the owner of a policy of insurance upon the life of a human being." Griffin v. McCoach, 123 F.2d 550, 551 (5th Cir. 1941). Consequently, insurance policies procured by those lacking a sufficient interest in the life of the insured are unenforceable. Going back to 1942, Texas courts have recognized three categories of individuals having an adequate interest:  1) close relatives; 2) creditors; and 3) those having an expectation of financial gain from the insured's continued life. Drane, 161 S.W.2d at 1058-59; Tamez v. Certain Underwriters at Lloyd's, London, 999 S.W.2d 12, 17-18 (Tex. App. 1998); Stillwagoner v. Travelers Ins. Co., 979 S.W.2d 354, 361 (Tex. App. 1998).

Wal-Mart argues that it has a reasonable expectation of pecuniary benefit in the continued lives of its employees sufficient to bring it within the last of the three categories described in Drane. Texas courts have held, however, that the state of employment alone does not give an employer an insurable

12

interest.  See, e.g., Stillwagoner, 979 S.W.2d at 361 ("The mere existence of an employer/employee relationship is never sufficient to give the employer an insurable interest in the life of the employee.").

Wal-Mart contends that, in addition to the bare employer/employee relationship, it possesses an expectation of financial gain from the continued lives of its employees by virtue of the costs associated with the death of an employee, such as productivity losses, hiring and training a replacement, and payment of death benefits.  These are costs that are associated with the loss of *any* employee, however, and, as Texas precedent clearly indicates, employers lack an insurable interest in ordinary employees.  E.g., id. at 362.  Indeed, Texas courts have recently rejected similar arguments based on the costs flowing from an employee's death.[4]  And, as Sims ripostes, Wal-Mart does not claim that Sims was of any special importance to the company, much less that Wal-Mart's "success or failure was dependent upon [the insured employee]."  Stillwagoner, 979 S.W.2d at 362-63.

Given that courts will uphold the insurable interest doctrine in the absence of contrary legislation, Wal-Mart argues that just

---

[4]See Tamez, 999 S.W.2d at 18-19 ("[A]n employer does not have a pecuniary interest in the continued life of its employee, unless that employee is crucial to the operation of the business."); Stillwagoner, 979 S.W.2d at 361-62 ("Even in the absence of evidence we may assume that [decedent's] death forced some readjustments which normally accompany the death of an employee. But an insurable interest does not result from the cessation of ordinary service.").

13

such legislative pronouncements have expanded the definition of insurable interest after <u>Drane</u>. A review of this legislation shows, however, that while the Texas Legislature has crafted certain addenda to the insurable interest doctrine, none of these modifications are relevant to the present case.

In 1951, for example, the Texas Legislature re-codified article 5048 of the Texas Civil Statutes as article 3.49 of the Texas Insurance Code.[5] This provision allows a business to be named as beneficiary in a policy insuring the lives of officers, stockholders, and partners -- the individuals in whom the business has an insurable interest. Tex. Ins. Code §§ 1103.003-.004 (Vernon 2003). As the district court pointed out, this provision is inapplicable because Sims was not a stockholder, officer, or partner of Wal-Mart.

Next, in 1953, the Legislature enacted article 3.49-1 of the Texas Insurance Code, which was amended in 1999.[6] Originally, insureds of new or existing life insurance policies could grant (in writing) an insurable interest to "any person" or entity by naming him or her as beneficiary or owner of that policy. With the 1999 legislation, adults can, as of January 1, 2000, consent in writing

---

[5]The Texas Insurance Code itself was recently re-codified in "a nonsubstantive revision." Acts of 2001, 77th Leg., ch. 1419, eff. June 1, 2003. Thus, effective June 1, 2003, article 3.49 became Tex. Ins. Code §§ 1103.001-.005 (Vernon 2003).

[6]Effective June 1, 2003, article 3.49-1 became Tex. Ins. Code §§ 1103.051-056 (Vernon 2003).

14

to the "purchase" of, or the "application" for, *new* insurance on their lives, which policies are purchased or applied for by a third party. Tex. Ins. Code §§ 1103.054-056 (Vernon 2003). This provision was not retroactive.[7] Though "this subchapter shall be liberally construed to effectuate [its] purposes," Tex. Ins. Code §§ 1103.052 (Vernon 2003), Sims never designated Wal-Mart as a beneficiary or owner of an insurance policy on his life. Sims also never provided consent, written or otherwise, for Wal-Mart to take out insurance on -- or otherwise acquire an insurable interest in -- his life. As such, article 3.49-1 and its re-codified progeny are also inapplicable.

Finally, in 1989, the Legislature enacted a provision that, under certain circumstances, allows an employer to obtain insurance on the lives of its employees to provide funds to offset fringe-benefit-related liabilities.[8] The COLI policy at issue does not meet the requirements of the 1989 statute, however, and Wal-Mart does not contend that it does (Wal-Mart merely cites the statute as an example of the Legislature's action in this area). Thus, to the extent that this provision expanded insurable interests, it did so in a way that does not affect the disposition of this case.

---

[7]"A policy delivered, issued for delivery, or renewed before January 1, 2000, is governed by the law as it existed immediately before the effective date of this Act, and that law is continued in effect for that purpose." Acts 1999, 76th Leg., ch. 438, § 3.

[8]Effective June 1, 2003,the relevant provision became Tex. Ins. Code §§ 1131.703 (Vernon 2003).

None of these legislative enactments -- which were thoroughly briefed by the parties and analyzed by the district court -- apply to the facts of this case, and we have found no other ones that do. Indeed, Tamez and Stillwagoner were both decided in the light of the law as it stood in 1998 (the year of Sims' death), and both clearly rejected employers' claims of having insurable interests in ordinary employees.[9]

Further, as the district court noted, the insurable interest doctrine was last taken up by the Texas Supreme Court in 1979 (not 1942, as Wal-Mart implies). Empire Life, 584 S.W.2d 855. Empire Life quoted and adopted the Drane decision and repeated the longstanding rule that a putative beneficiary or owner only has an insurable interest in the life of another where the beneficiary is "(1) so closely related by blood or affinity that he wants the other to continue to live, irrespective of the monetary considerations; (2) a creditor; [or] (3) one possessing a reasonable expectation of pecuniary benefit or advantage from the continued life of another." 584 S.W.2d at 859; Drane, 161 S.W.2d at 1058-59; Tamez, 999 S.W.2d at 17; Stillwagoner, 979 S.W.2d at 360-61. This Court has also recently acknowledged this Texas line of cases. DeLeon v. Lloyd's, London, 259 F.3d 344, 350 (5th Cir.

---

[9]Wal-Mart contends that Tamez and Stillwagoner should not govern, as both were decided before the 1999 substantive amendment to then-article 3.49-1 of the Texas Insurance Code. As discussed supra, however, this statute does nothing to support Wal-Mart's position, as Sims never gave the required written consent for Wal-Mart to be designated as beneficiary.

16

2001) (quoting the _Drane_ rule and its enumeration of the three valid insurable interest classes).

It is clear that _Drane_ and its progeny have held fast to the common law insurable interest doctrine, and the Texas Legislature's enactments altering that well-established doctrine have been slow and careful. While the statutory provisions analyzed _supra_ demonstrate an ever-broadening approach to insurable interests, there is no indication that the Texas Supreme Court would create other exceptions without explicit statutory authorization. And, as the district court concisely put it, it is not the role of federal courts sitting in diversity to ignore longstanding and consistently applied Texas legal authorities. We decline to either contradict state court precedent or expand upon the express language of legislative enactments.

We therefore reject Wal-Mart's challenge to the Texas insurable interest doctrine, and find that its COLI policy on the life of Douglas Sims violated Texas law.[10] The district court's ruling on this issue is AFFIRMED.

C

---

[10]In such a case, once the named beneficiary (the one lacking an insurable interest) is paid, Texas law applies the equitable remedy of constructive trust to enable recovery by the wronged party. _DeLeon_, 259 F.3d at 350-51; _Cheeves v. Anders_, 28 S.W. 274, 275-76 (Tex. 1894); _Tamez_, 999 S.W.2d at 15-16 and n.1; _Stillwagoner_, 979 S.W.2d at 360. In this manner -- and if there is no procedural bar such as the statute of limitations discussed _infra_ -- the lawful beneficiary, Sims, recovers the proceeds unlawfully procured by Wal-Mart.

17

Now that we have found that Sims has presented a valid claim under Texas law as properly applied, we must look at whether such a claim is barred by the relevant statute of limitations.  The district court's determination of the proper limitations period is subject to de novo review.  In re Hinsley, 201 F.3d 638, 644 (5th Cir. 2000).  This limitations determination requires more than mere checking of calendrical tables, however, as it is perhaps the most complex issue presented in this appeal.

In analyzing limitations, the district court first determined that, however the claim forming the basis for this action is characterized, the applicable limitations period was four years.[11] It then ruled that Sims' request for a declaratory judgment that Wal-Mart lacked an insurable interest in Sims' life and thus violated Texas law was timely because the claim was brought within four years of Wal-Mart's termination of its COLI policy (thus ending a continuing violation).  The district court also found that Sims' request for a constructive trust was timely because it was brought within four years of Sims' death.

The first step in evaluating the district court's limitations analysis is to determine the correct statute of limitations to apply.  To that end, the applicable limitations period (like the

---

[11]The district court ruled that either Tex. Civ. Prac. & Rem. Code § 16.004(a)(3) (West 2003) (statute of limitations for contract claims is four years) or Tex. Civ. Prac. & Rem. Code § 16.051 (West 2003) (residual statute of limitations is four years) applies, not specifying which.

18

choice of law) should be determined with reference to the theory on the basis of which the Sims estate pursues its claims. The district court characterized this action as comprising two claims, one for declaratory judgment and one for a constructive trust arising out of unjust enrichment related to a contractual dispute. This analysis is somewhat an inversion of legal principles: Both declaratory relief and constructive trusts are remedial devices rather than causes of action themselves. See, e.g., Okpalobi v. Foster, 244 F.3d 405, 423 (5th Cir. 2001) (en banc); DeLeon, 259 F.3d at 351; Meadows v. Bierschwale, 516 S.W.2d 125, 131 (Tex. 1974) ("[c]onstructive trusts, being remedial in character").[12] Further, as we stated earlier, the contracts between Wal-Mart and its insurer are only tangentially related to the particular claim before the court; there is no dispute over the contracting parties' obligations.[13] What, then, is the underlying cause of action?

There is clearly only one, though it can be stated in two ways: Sims claims that Wal-Mart engaged in either unjust enrichment or conversion stemming from the insurable interest violation. See, e.g., Heldenfels Bros., Inc. v. Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit

---

[12]See also Bado Equip. Co. v. Bethlehem Steel Corp., 814 S.W.2d 464, 477 (Tex. App. 1991) (constructive trust remedy unavailable when underlying claim is barred by statute of limitations).

[13]See discussion in Part II-A, supra.

from another by . . . taking of an undue advantage."); <u>Green Int'l Inc. v. Solis</u>, 951 S.W.2d 384, 391 (Tex. 1997) ("Conversion is the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights."). By taking out an insurance policy on Sims' life without his knowledge or consent -- and collecting the policy's proceeds at Sims' death -- Wal-Mart unjustly profited from the death of someone in whom it had no insurable interest. Stated another way, Wal-Mart, having violated the insurable interest doctrine, unlawfully took funds that, under Texas law, rightfully belonged to Sims' estate.

The applicable limitations period for Sims' claim -- whether it is formally labeled "unjust enrichment" or "conversion" -- is two years, not four. Tex. Civ. Prac. & Rem. Code § 16.003(a) (West 2003); <u>Wagner & Brown, Ltd. v. Horwood</u>, 58 S.W.3d 732, 737 (Tex. 2001); <u>HECI Exploration Co. v. Neel</u>, 982 S.W.2d 881, 885 (Tex. 1998); <u>cf</u>. <u>American Nat'l Ins. Co. v. Villegas</u>, 32 S.W.2d 1109, 1110 (Tex. Civ. App. 1930) (holding that suit to recover premiums paid by plaintiff lacking insurable interest was governed by two-year limitations period).[14]

Thus, the district court erred in holding that unjust enrichment claims -- such as Sims' claim here -- are governed by the same four-year limitations provision as contract claims, Tex.

---

[14]The court in <u>Villegas</u> was interpreting Tex. Civ. Stat. art. 5526 (Vernon 1925), which, in the current codification, is § 16.003.

Civ. Prac. & Rem. Code § 16.004(a)(3).  In fact, as cited supra,

the Texas Supreme Court has recently re-affirmed its (also recent)

holding that a different provision, Tex. Civ. Prac. & Rem. Code §

16.003(a), with a *two-year* limitations period, applies to unjust

enrichment claims.  Horwood, 58 S.W.3d at 737; HECI, 982 S.W.2d at

885.[15]

Now that we have established the correct limitations period,

we must determine when this period started, and whether it ended

before June 28, 2001, the date this suit was filed.  In determining

when claims accrue, Texas follows the "legal injury" test, under

which "[a] cause of action generally accrues, and the statute of

limitations begins to run, when facts come into existence that

authorize a claimant to seek a judicial remedy."  Johnson & Higgins

of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex.

1998).[16]  The legal injury here arose when Wal-Mart received the

_____

[15]Sims' attempts to distinguish Horwood and HECI lack merit.
Sims argues that HECI was governed by the portion of § 16.003(a)
relating to property damage (the facts of the case included damage
to an oil reservoir), and that Horwood's affirmation of HECI is
dicta in that the case was ultimately decided on a waiver of the
limitations defense.  Both these contentions are belied by the
plain text of the respective decisions.  HECI, 982 S.W.2d at 885
("[A] two-year statute of limitations [bars a] claim for unjust
enrichment.");  Horwood, 58 S.W.3d at 737 ("HECI . . . noted that a
two-year statute governed unjust enrichment claims.").

[16]See also S.V. v. R.V., 933 S.W.2d 1, 4 (Tex. 1996) (claim
accrues when "a wrongful act causes some legal injury, even if the
fact of injury is not discovered until later, and even if all
resulting damages have not yet occurred").  This test is premised
on Texas policies so powerful that the fact that even a legitimate
claim is precluded "is not reason enough to justify a judicial
exception to the statute."  Robinson v. Weaver, 550 S.W.2d 18, 20

21

proceeds of the illegal policy, as this is when Wal-Mart received funds that should have gone to Sims' estate -- and when the appropriate remedy (a constructive trust) arises.[17]

The limitations period on Sims' claim would therefore have ended two years after Wal-Mart received the policy proceeds from its insurer. Wal-Mart has failed to produce facts, however, to show that the statute of limitations had run when this suit was filed; it failed to produce the date -- beyond a bare contention that it was at some point in 1999 -- when it received the money. And limitations is a defense that must be pled and proven by the party asserting it to the same standard as a substantive claim, Fed. R. Civ. P. 8(c), which in this case is the summary judgment standard.[18] Wal-Mart may or may not have received the policy proceeds more than two years before June 28, 2001, but Wal-Mart has not provided any evidence of this.

In short, Wal-Mart has failed to carry its burden of proof. The district court thus did not err in denying Wal-Mart summary judgment on the limitations defense, and its ruling on this issue is AFFIRMED.

III

---

(Tex. 1977).

[17]See discussion at conclusion of Part II-B, supra.

[18]Summary judgment is proper where the pleadings and summary judgment evidence present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

22

For the foregoing reasons, Wal-Mart's motion to certify to the Texas Supreme Court is DENIED, the rulings of the district court are AFFIRMED, and this case is REMANDED for proceedings not inconsistent with this opinion.

MOTION TO CERTIFY DENIED; AFFIRMED AND REMANDED.