United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 21, 2004**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

m 03-41067

BAYOIL SUPPLY & TRADING LIMITED,

Plaintiff-Appellee,

VERSUS

GULF INSURANCE COMPANY, ET AL.,

Defendants,

GULF INSURANCE COMPANY;
CERTAIN UNDERWRITERS AT LLOYDS SUBSCRIBING TO CERTIFICATE 41557;
LLOYDS OF LONDON SYNDICATES
#2724, 0079, 1221, 0002, 1183, 0488, 2488, AND 0079;
TERRA NOVA INSURANCE COMPANY, LIMITED;
CGU INTERNATIONAL INSURANCE PLC,

Defendants-Appellants.

Appeal from the United States District Court
for the Southern District of Texas
m G-02-CV-313

Before GARWOOD, HIGGINBOTHAM and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

The appealing defendants challenge a summary judgment for plaintiff on its insurance coverage claim.[2] Concluding that the district court erred as a matter of law in interpreting the contract, we reverse and render judgment for appellants.

I.

In 2000, Bayoil Supply and Trading Limited ("Bayoil") purchased oil from Iraq under the United Nations's "Oil for Food" program. The oil was loaded onto Bayoil's ship, the M/T ESSEX. At the time of loading, the United Nations-appointed inspectors (Saybolt International), members of the ESSEX's crew, and Bayoil's representative (Oil Inspections) measured the oil in the ship's tanks and calculated the amount based on the tank tables. This calculation was used on the bill of lading, on the basis of which Bayoil paid Iraq with an irrevocable letter of credit.

Only after leaving port did the Oil Inspections surveyor realize that although the initial measurement had been correct, the amount of oil in one tank had been miscalculated by using the tables for another, larger tank; the actual quantity of oil was some 48,312 barrels less than that stated in the initial calculation and bill of lading. When Bayoil informed Iraq that it had paid for that many barrels that it had not received, Iraq refused to return Bayoil's money, approximately $1.5 million. Bayoil claims this is a loss covered by its "all risks" insurance policy. The defendant underwriters denied coverage.[3]

Bayoil brought a declaratory judgment action, alleging that the 48,312 barrels constituted a "shortage" and was therefore covered under its policy. The district judge personally attempted to mediate, then granted Bayoil's motion for summary judgment, then ordered the parties to further mediation. When this second mediation failed to resolve the dispute, the court entered final judgment for Bayoil.

In the district court, Bayoil claimed that coverage should be based on the erroneous bill of lading pursuant to which Bayoil had paid Iraq. Underwriters maintained that no covered loss had occurred and that any loss should be measured with reference to the corrected survey. The court based its summary judgment on the heading at section I.2 of the Shortage, Leakage and Contamination Endorsement,[4]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2] The district court granted summary judgment for the defendants on Bayoil's non-contract claims, but Bayoil does not appeal that judgment, which is not before us.

[3] A comparison of the corrected survey with the survey at the destination showed a shortage in addition to the 48,312 barrels claimed here. Defendants have paid Bayoil's claim for that shortage, which is not disputed here.

[4] This provision reads in relevant part:

2. At time of, and during, loading SS Warranted that careful measurements as to gauge, weight and temperature of the separable components of th shipment be made and certified to by a Surveyor, who shall also supervise loading and repeat (and certify

(continued...)

which the court interpreted to specify that any measurements and corrections must take place at the time of loading, and that the correction made after the loading had been completed could not be used to determine whether a shortage had occurred. The court held alternately that if the contract was ambiguous, it was to be construed against the insurer.

## II.

We review a summary judgment *de novo*, using the same standards as did the district court. *BP Oil Int'l Ltd. v. Empressa Estatal Petoleos de Ecuador*, 332 F.3d 333, 336 (5th Cir. 2003); *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400 (5th Cir. 2004). Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Because there are no issues of fact, the resolution of the case turns on an interpretation of the insurance contract as a matter of law.

## III.

The insurance contract is to be interpreted in accordance with Texas law. TEX INS. CODE art. 21.42 (1951). "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "To achieve this object the courts will examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless." *Universal C. I. T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 158 (Tex. 1951). With this in mind, we examine

the entire contract to determine whether Bayoil's claimed loss falls under the policy's coverage.

## A.

Under Texas law, the holder of an all-risk policy has the burden to establish that a covered loss occurred. *See Dow Chem. Co. v. Royal Indem. Co.*, 635 F.2d 379, 386 (5th Cir. Unit A Jan. 1981); *Employers Cas. Co. v. Block*, 744 S.W.2d 940 (Tex. 1988), *overruled on other grounds*, *State Farm Fire & Cas. v. Gandy*, 925 S.W.2d 696 (Tex.1996). The district court erred in allowing Bayoil to recover under its policy when Bayoil had not demonstrated that it had suffered a physical loss as the policy requires.

It is undisputed that Bayoil did not physically lose oil but did lose a significant amount of money. Appellants argue that the policy covers only physical loss and that Bayoil's monetary loss therefore does not fall under its coverage. Bayoil, for its part, appears to rely on its characterization of the policy as an "all risk" policy and contends that it has suffered a loss that must be covered.

The title "all risk" is not itself conclusive; rather, we must look to the terms of the policy to determine what risks and losses are covered. The endorsement purports to cover a "loss" resulting from "shortage," and so forth, but does not define what constitutes a shortage or specify whether the "loss" can be economic or must be physical.[5] Because,

---

[4](...continued)

to) such measurements as frequently as he deems necessary and desirable . . . .

[5] The endorsement reads in relevant part:

SHORTAGE, LEAKAGE AND
CONTAMINATION ENDORSEMENT

(continued...)

however, we read the contract as a whole, the endorsement must be construed in conjunction with the average terms and conditions of the policy.

The body of the contract provides: "This insurance covers against all risks of physical loss or of damage to the subject matter insured from any external cause but specifically excluding unexplained shortage and/or unexplained loss in weight (or volume)." Thus, the contract provides that the required physical loss from an external cause may not consist of or be established merely by an "unexplained shortage." The endorsement provides for an extension of coverage by allowing physical loss to be established by an *unexplained* shortage under the stated circumstances. Here, however, the shortage is *not un*explained, but is conclusively *explained* as being *not* a physical loss at all, but *only* a calculation error.

To show coverage, therefore, Bayoil must prove a physical loss. Because there is no genuine issue of fact as to whether Bayoil actually suffered a physical loss of oil, appellants, not Bayoil, are entitled to summary judgment.

### B.

Because Bayoil cannot demonstrate a covered loss, we need not address whether the district court erred in finding that the magnitude of Bayoil's loss was to be determined on the basis of the initial, incorrect survey calculations. Inasmuch as the district court's finding was based solely on the heading at section I.2 of the endorsement, however, we note that individual headings are not to be considered in isolation from the contract as a whole. Rather, the court must examine the entire document to determine the parties' intent. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983).

This provision, read in the context of an endorsement to a policy that provides coverage for physical loss evidenced only by an unexplained shortage, can be better interpreted to indicate that the parties intend for an initial survey to provide an accurate account of the amount of oil actually loaded onto a ship, and the parties have made provision to correct inaccuracies in that initial reading. Thus, where the insured admits that no physical loss occurred, the intent of the parties is best fulfilled by using an accurate measurement of the amount of oil it possessed at the time of and during loading.

Using the accurate, corrected measurement of the oil loaded onto the ESSEX demonstrates that Bayoil has been compensated for the shortage that actually occurred between the loading and unloading, and that it is not entitled to coverage for the oil that was never loaded. Thus, it was error for the district court to grant summary judgment for Bayoil on that basis.

For the foregoing reasons, the summary judgment is REVERSED, and judgment is RENDERED for appellants.

---

[5](...continued)
THIS INSURANCE ALSO COVERS:

Loss due to shortage and/or leakage and/or contamination and/or loss in weight (or volume) howsoever arising . . . .