**QUICKSILVER RESOURCES, INC., Plaintiff,**

v.

**EAGLE DRILLING, LLC, et al., Defendants.**

**Civil Action No. H–08–868.**

United States District Court, S.D. Texas, Houston Division.

May 24, 2011.

Daniel M. McClure, Christopher R. Hart, Fulbright & Jaworski, Houston, TX, David A. Palmer, Shayne D. Moses, Moses Palmer Howell LLP, J. Robert Forshey, Jeffrey Philipp Prostok, Matthew Garrett Maben, Forshey Prostok LLP, Fort Worth, TX, for Plaintiff.

Stanley M. Ward, Woodrow K. Glass, Ward & Glass LLP, Norman, OK, Trey Andrew Monsour, Haynes & Boone LLP, Dallas, TX, Kenneth I. Jones, Jr., Kenneth Jones Attorney at Law, Mark K. Stonecipher, Fellers Snider et al., Oklahoma City, OK, for Defendants.

### Order

GRAY H. MILLER, District Judge.

Pending before the court is the Magistrate Judge's Memorandum and Recommendation (Dkt. 285) (hereinafter "M & R") relating to whether Texas law or Oklahoma law should apply to various tort claims alleged by Quicksilver Resources, Inc. ("Quicksilver") and Eagle Drilling LLC ("Eagle"). Having reviewed the M & R, objections from Glenn Darden, Thomas F. Darden, Paul J. Cook (collectively, the "Individual Defendants"), and Quicksilver (Dkt. 287), objections from Eagle (Dkt. 288), the Individual Defendants' response to Eagle's objections (Dkt. 290), other relevant documents contained within the record, and the applicable law, the court is of the opinion that the objections should be overruled and that the M & R should be adopted. The court therefore **OVERRULES** the objections to the M & R (Dkts. 287, 288) and **ADOPTS** the M & R (Dkt. 285) in its entirety.

It is so ORDERED.

### *MEMORANDUM AND RECOMMENDATION*

NANCY K. JOHNSON, United States Magistrate Judge.

Pending before the court[1] are the parties' conflicts-of-law briefs concerning Ea-

---

1. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. Doc. 155. Although a conflicts-of-law

gle Drilling, LLC's ("Eagle") tort claims (Docs. 272, 274) and the responses thereto (Docs. 279, 280). After considering their arguments and the applicable law, the court **RECOMMENDS,** for the reasons expressed below: 1) that the laws of the State of Oklahoma be applied to the tort claims brought by Quicksilver and Eagle against each other and to Eagle's false representation claim against the individual defendants; and 2) that the laws of the State of Texas apply to Eagle's claims of tortious interference, conspiracy and false light invasion of privacy against the individual defendants.

## I. Conflicts Standard

 When the laws of two or more states may apply to the various claims in a federal diversity action, the court must apply the choice of law rules of the forum state. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir.2004) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir.), *modified on denial of rehearing on other grounds*, 355 F.3d 356 (5th Cir.2003); *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir.1990). Thus, Texas law determines whether Texas or Oklahoma law applies to each claim in this action. *Cf. Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 291 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) ("Texas law may apply to some claims, but not other claims.").

 Texas law generally gives effect to contractual choice-of-law provisions. *See Caton*, 896 F.2d at 942 (applying Texas conflicts law); Restatement (Second) of Conflict of Laws ("Restatement") § 187. If broad enough, such provisions may cover tort as well as contract claims. *Cf. Caton*, 896 F.2d at 943 (limiting a narrow choice-of-law provision to claims related to contract construction). In the absence of an applicable choice of law provision, this court applies Texas law unless a conflict exists between Texas law and that of the other proposed state. *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir.2005); *see also Kimberly–Clark Corp. v. Factory Mut. Ins. Co.*, 566 F.3d 541, 546 n. 6 (5th Cir.2009); *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir.2002).

 If a conflict exists, Texas directs courts to employ the "most significant relationship" test as stated in the Restatement. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979) (adopting the methodology of the Restatement for application in determining choice of law for tort claims); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420–21 (Tex.1984) (applying the same methodology to contract claims); *see also Mayo*, 354 F.3d at 403 (stating that Texas courts use the "most significant relationship" test for all cases in the absence of an applicable contractual choice-of-law provision); Restatement § 6 (listing factors to consider in resolving a conflict of laws in the absence of a statutory directive). The court evaluates the contacts "for their quality, not their quantity." *Mayo*, 354 F.3d at 405.

## II. Analysis

The remaining claims in this action are contract[2] and tort claims brought by Quicksilver against Eagle and tort claims

---

analysis is not dispositive of any claim or party, its bearing on the disposition of the case is significant enough to warrant the court's issuance of a recommendation subject to the parties' objections.

**2.** The contract claims are breach of contract, breach of warranties, and requests for several declarations.

brought by Eagle against Quicksilver and the individual defendants (collectively "the Quicksilver Parties"). As explained in prior memoranda, the provision in the International Association of Drilling Contractors Daywork Drilling Contracts ("IADC Contracts") selecting the application of Oklahoma law is valid and dictates that Oklahoma law apply to Quicksilver's contract claims.

The parties disagree on what law applies to the tort claims. Eagle contends that Oklahoma law governs all claims in this lawsuit while the Quicksilver Parties champion Texas law for the tort claims. In order for the court to determine what state's laws apply to each of the tort claims, the court must engage in a conflicts analysis for each in relation to each defendant. *See Scottsdale Ins. Co.*, 175 S.W.3d at 291. The court begins with Quicksilver.

## A. *Quicksilver*

■ The first step in the analysis with regard to Quicksilver is to decide whether the contractual choice-of-law provision is broad enough to cover Quicksilver's fraud and negligence claims and Eagle's tortious interference, false representation, conspiracy, and false light invasion of privacy claims. The "Governing Law" provision in each of the IADC Contracts states, "This contract shall be construed, governed, interpreted, enforced and litigated, and the relations between the parties determined in accordance with the laws of County of Cleveland, State of Oklahoma." [3]

In *Caton*, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") found that the choice-of-law provision in the parties' agreement was too narrow under Texas law to apply it to breach of the duty of good faith and fair dealing and restitution under quantum me-

ruit. *Caton*, 896 F.2d at 943. There, the contract dictated only that the parties' agreement was to "be construed under the laws of the State of California." *Id.* at 942. The Fifth Circuit stated, "The parties' narrow choice of law clause does not address the entirety of the parties' relationship ... and hence does not end our [choice-of-law] inquiry." *Id.* at 943.

Almost a decade later, the Supreme Court of Texas reached the same conclusion when evaluating a similar provision that read, "This agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, U.S.A." *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex.1999). Texas' highest court explained that the provision did "not purport to encompass all disputes between the parties or to encompass tort claims." *Id.* Because the tort claims that plaintiff asserted were not dependent on the interpretation and enforcement of the contract, the choice-of-law provision did not apply. *See id.*

Another federal opinion, which involved a contract provision stating that the agreement was governed by and was to be construed in accordance with New York law, similarly held that Texas law would not extend the provision to cover the plaintiff's fraud and negligent misrepresentation claims. *Benchmark Elecs. Inc.*, 343 F.3d at 726. The Fifth Circuit noted that the contractual choice-of-law provision did not address the parties' entire relationship. *Id.*

In contrast, a contractual provision that applies to the parties' relationship more broadly should be extended to cover tort claims. *See, e.g., El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.* (hereinafter "*El Pollo Loco*"), 344 F.Supp.2d 986, 989 (S.D.Tex.2004). The contract provision in *El Pollo Loco* stated that Mexican law

**3.** *See* Docs. 235–1, 235–3, 235–4, IADC Contracts, ¶ 18.

would apply to all disputes that "arise in connection with the performance of this Agreement." *Id.* at 988. The district court found that the wording of the provision justified application to the tort claims in that case because they concerned disputes that were connected with contract performance. *Id.* at 989.

With regard to the contract provision in the case sub judice, Quicksilver and Eagle agreed, not only that the IADC Contracts would be interpreted and construed in accordance with Oklahoma law, but also that the parties' relations would be determined in accordance with Oklahoma law. This provision is significantly broader than those discussed in the above cases in which the courts did not extend application to tort claims. In fact, it is broader than the one addressed in *El Pollo Loco*, which the court did extend to torts arising out of the contract relationship.

Quicksilver and Eagle did not limit their selection of Oklahoma law to the construc-

tion of the IADC Contracts or to disputes arising in connection with those contracts. Rather, they agreed to litigate all matters arising out of their "relations" under Oklahoma law. The wording is most akin to what the Fifth Circuit in *Caton* suggested would end the choice-of-law inquiry. *Caton*, 896 F.2d at 943 (intimating that a choice-of-law provision addressing the entirety of the contracting parties' relationship would bind the parties to the selected state's laws for all claims).

■ The court finds that Oklahoma law applies to all of the claims asserted by both Quicksilver and Eagle against the other.[4]

## B. *Individual Defendants*

■ The same is not true of the individual defendants because none was a party to the IADC Contracts, and, thus, none is subject to the choice-of-law provisions therein.[5] *See Mayo*, 354 F.3d at 403. The

---

4. The court is not swayed by Quicksilver's counter-argument that the choice-of-law provision does not apply because Eagle assigned the IADC Contracts to Eagle Domestic Drilling Operations LLC. Quicksilver does not cite any law to support its assertion that assignment of contracts vitiates the parties' agreement regarding the resolution of their disputes. A choice-of-law provision is not a contractual right pursuant to which a party asserts any claim. The better view is that a broad choice-of-law provision, as in this case, survives the assignment and/or termination of the relevant contract.

5. Eagle contends that the individual defendants, who are "officers, directors, shareholders and employees of Quicksilver," are bound by the contractual choice-of-law provision because they are third-party beneficiaries and/or are closely related to Quicksilver and/or have brought tort claims against Eagle that relate to Eagle's performance of the IADC Contracts. *See* Doc. 272, Eagle's Conflicts–of–Law Brief, pp. 4–5. The court disagrees.

In addition to the fact that the individual defendants do not have any pending tort

claim against Eagle in this lawsuit, the nonbinding case law on the enforcement of forum-selection clauses, which was cited by Eagle, is unpersuasive. None of the cases warrants extending Quicksilver and Eagle's choice of law to these noncontracting individuals. *Cf. Baker v. LeBoeuf, Lamb, Leiby & Macrae*, 105 F.3d 1102, 1105 (6th Cir.1997) (addressing a nonsignatory's argument that it was entitled to enforce a forum-selection clause against one of the contracting parties); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir.1993) (quoting the United States Court of Appeals for the Third Circuit, which stated that the pleading of noncontractual theories should not prevent enforcement of a forum selection clause when the relationship between the parties is contractual); *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 n. 5 (9th Cir.1988) (applying a forum-selection clause to nonparties whose conduct was closely related to the contractual relationship); *Harrison v. Procter & Gamble*, Civil Action No. 7:06–cv–121–R, 2007 WL 431085, at *2 (N.D.Tex. Feb. 8, 2007) (unpublished) (holding that a nonsignatory that was closely

next step is to ascertain whether the substantive decisional law of Texas conflicts with that of Oklahoma. Eagle contends that the two states' laws do conflict in two significant areas, and the individual defendants take the position that the court need not engage in a choice-of-law analysis.[6]

The substantive issues raised by Eagle's claims are whether the individual defendants: 1) tortiously interfered with Eagle's business relationships with third parties by "making false and misleading statements and by acting in an improper manner that was wrongful, malicious, intentional and without justification or privilege;" 2) made material, false representations regarding the forum for litigation, the provision of a list of wells to be drilled, the payment of liquidated damages, and their knowledge of how difficult and problematic a new rig would be; 3) "conspired, planned and orchestrated an unlawful scheme to intentionally and unlawfully damage [Eagle], to breach the [IADC] Contracts, and to wrongfully interfere with and damage [Eagle's] business relationships with others;" and 4) publicly made false statements concerning Eagle's alleged failure to perform under the IADC Contracts, which placed Eagle in a false light.[7]

■ Eagle identifies two areas of conflict between Texas and Oklahoma law. One affects only Eagle's false light invasion of privacy claim and is an obvious conflict. Oklahoma recognizes the cause of action and Texas does not. *Compare Mitchell v. Griffin Television, L.L.C.*, 60 P.3d 1058, 1061 (Okla.Civ.App.2002) *with Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex.1994).

The other identified area of conflict is more subtle and pervasive. The two states differ in methods for calculating and capping punitive damages. *Compare* Okla. Stat. tit. 23 § 9.1 *with* Tex. Civ. Prac. & Rem.Code § 41.008. This difference may or may not ultimately have an impact on the final judgment in the case, but the possibility exists that it could. The punitive-damages conflict is material to all of Eagle's tort claims. Therefore, the court finds that the laws of Texas and Oklahoma conflict in at least two respects material to Eagle's tort claims.

■ Finding conflicts, the court must examine the relationships of Texas and Oklahoma to the occurrences and the parties with regard to each claim asserted

---

related to a contracting party could not enforce a contractual forum-selection clause because it was not foreseeable at the time of contracting that it would be bound by the provision); *Alt. Delivery Solutions, Inc. v. R.R. Donnelley & Sons Co.*, No. Civ. SA05CA0172, 2005 WL 1862631, at *15 (W.D.Tex. July 8, 2005) (unpublished) (finding a nonsignatory could enforce a forum-selection clause under either the "closely related" test or the Fifth Circuit's test for whether a nonsignatory could compel arbitration pursuant to a contract provision); Tex. *Source Group, Inc. v. CCH, Inc.*, 967 F.Supp. 234, 237 (S.D.Tex.1997) (finding that a forum-selection clause governed parties' disputes despite the fact that some of the claims concerned a nonparty to the contract).

6. The individual defendants do not suggest that the laws are not different but argue that

the court need not engage in a choice-of-law analysis because their pending summary judgment motions do not touch on the areas of conflict and because the outcome would be the same regardless of which state's laws are applied. The court recognizes that the conflicts may not come into play immediately in this case and that the net effect of the differences between Texas and Oklahoma law may not always be very significant. However, if the Quicksilver Parties are unsuccessful on summary judgment and at trial, an award of punitive damages is possible. More importantly, outcome is not the focus of the choice-of-law analysis.

7. Doc. 149, Eagle's 1st Am. Compl., pp. 22–30.

against the individual defendants. *See Schneider Nat'l Transp.*, 280 F.3d at 536; *Gutierrez*, 583 S.W.2d at 318; Restatement § 6. "Texas law requires an issue-by-issue choice of law analysis." *Benchmark Elecs., Inc.*, 343 F.3d at 727 (referring specifically to the analysis when dealing with narrow choice of law provisions). Three Restatement sections guide the court's "most significant relationship" analysis in this case. Restatement § 148 applies to fraud and misrepresentation claims, and Restatement § 145 applies generally to tort claims. Both sections refer to Restatement § 6, which identifies factors that are relevant to determining which state has the most significant relationship to the occurrence and the parties. The nonexclusive list of factors is: 1) needs of interstate and international systems; 2) relevant policies of the forum; 3) relevant policies of other interested states and those states' interests in determining the issue at hand; 4) protection of justified expectations; 5) basic policies underlying the area of law in issue; 6) certainty, predictability, and uniformity of result; and 7) ease with which the relevant law can be determined and applied. Restatement § 6(2).

Beginning with Eagle's false representation claim, the court looks to Restatement § 148,[8] which provides two methods for selecting the applicable law, each depending on where the action in reliance occurred. Restatement § 148. When the action in reliance occurs in the state where the false representations were made and received, the local law of that state is applied unless another state has a more significant relationship as measured by the factors in Restatement § 6. Restatement

§ 148(1). When the action in reliance occurs at least in part in a state other than that where the false representations were made, as in this case, courts should apply the law of the state with the most significant relationship to the occurrence and the parties. Restatement § 148(2). The following contacts are among those to be considered with respect to the particular issue in making the determination:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties,

(e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Id.*

■ In its brief, Eagle refers generally to the Quicksilver Parties and details little with regard to the individual defendants. Resorting to Eagle's First Amended Complaint,[9] the court discerns several allegations that are central to Eagle's false representation claim against the individual defendants.

---

**8.** The parties discuss only Restatement § 145, but the court finds that Restatement § 148 controls Eagle's false representation claim. *See Benchmark Elecs., Inc.*, 343 F.3d at 727–28.

**9.** Doc. 149.

With regard first to Cook, the pleading alleged that Cook first encountered Eagle at an auction in Oklahoma and there discussed the possibility of having Eagle build and operate rigs for Quicksilver in Texas. According to Eagle's live pleading Cook visited Eagle's yard in Oklahoma, where he inspected the rigs and discussed contract terms with Rodney Thornton of Eagle. At that time, Cook allegedly made false representations that underlie Eagle's claim.

Although the alleged representations were made and received in Oklahoma, Eagle's actions in reliance occurred in both Oklahoma and Texas. The first subsection of Restatement § 148 is therefore inapplicable. Applying the Restatement § 148(2) list of contacts, the court nevertheless finds that Oklahoma law should apply to the false representation claim against Cook. Eagle relied on Cook's statements from inception of the contractual relationship in Oklahoma, where it refurbished the rigs, and later in Texas, where it completed work on the first rig and began drilling operations.[10] Cook made and Eagle received the representations in Oklahoma. The residency factor favors neither state because Cook is domiciled in Texas and Eagle in Oklahoma. The rigs were in Oklahoma at the time of Cook's representations. The contract called for performance by Eagle in both states. On balance, Oklahoma had a slightly more significant relationship with the events, Cook, and Eagle.

Neither Eagle's brief nor amended complaint indicate that the Dardens made any false representation in Oklahoma or that the Dardens were in Oklahoma at all during the negotiating and contracting period when the alleged false representations were made. The allegations seem to imply that, if the Dardens made representations of the sort alleged, Eagle received them in Oklahoma. The reliance, residency, and performance factors touch both states regardless of who made the representations and where. The remaining factor, where the rigs were at the time, then, tips the scale in favor of the application of Oklahoma law.

Thus, the court should apply Oklahoma law to Eagle's false representation claims. The more abstract factors of Restatement § 6(2) generally support this conclusion. The only two that seem to have relevance to this action are the protection of justified expectations and the certainty, predictability and uniformity of result. Because Cook's alleged misdeeds occurred in Oklahoma, he certainly should expect that Oklahoma law would apply, especially in light of Eagle's insistence on the choice-of-law provision in the contract. The Dardens, on the other hand, would be justified in expecting Texas law to apply to their actions in Texas, but the application of Oklahoma law would hardly be a surprise. By applying Oklahoma law to all Defendants, the court avoids any possible lack of uniformity in the results.

Eagle's other tort claims are covered by Restatement § 145, which lists the following contacts as significant:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

---

10. Eagle suggests that it assigned the contract before it performed any work in Texas, but the record indicates that transportation of the first rig to Texas began in late May 2006 and Eagle did not assign the IADC contracts until late August 2006. Essentially one-half of the contract term prior to assignment involved performance in Texas.

(d) the place where the relationship, if any, between the parties is centered.

■ Eagle's other tort claims are tortious interference, conspiracy, and false light invasion of privacy. According to Eagle's live pleading, Cook and the Dardens made false representations to Eagle Domestic Drilling Operations LLC ("EDDO") regarding Eagle's performance of the IADC contracts, and Cook allegedly made statements to EDDO and others that damaged Eagle's reputation. The individual defendants allegedly conspired to damage Eagle, to interfere with its business relations, and to breach the IADC Contracts. Although the complaint does not specify, there is no room to infer that these actions took place anywhere but Texas.

These claims differ significantly from the false representation cause of action because all of the alleged misconduct underlying these claims occurred in Texas. Eagle's suggestion that, because the conduct targeted Oklahoma,[11] its law should apply is unavailing in light of the quantity and quality of the Texas contacts. Nothing in the allegations indicates that any false or misleading statement to third parties was made by the individual defendants while in Oklahoma, and it appears that many were made to third parties that were also in Texas at the time. The operation of the conspiracy occurred in Texas where all of the individual defendants were located. The significance of these contacts in relation to the issues underlying these tort claims makes the location of the conduct outweigh the location of the injury. In fact, the location of the injury is based solely on Eagle's domicile, a factor in and of itself.

The court should apply Texas law to the remaining tort claims against the individual defendants. The general principles of Restatement § 6(2) have little bearing on this decision. The parties should not be surprised by the application of either Texas or Oklahoma law, and the individual defendants would be justified in expecting Texas law to apply for their alleged behavior, which occurred solely in the state of Texas. Applying Oklahoma law to all of the tort claims against Quicksilver and Texas law to these three tort claims against the individual defendants runs the risk of differing results. However, the court does not find that this one factor justifies abandoning the "most significant relationship" test.

### III. Conclusion

Based on the foregoing, the court **RECOMMENDS** 1) that the laws of the State of Oklahoma be applied to the tort claims brought by Quicksilver and Eagle against each other and to Eagle's false representation claim against the individual defendants; and 2) that the laws of the State of Texas apply to Eagle's claims of tortious interference, conspiracy and false light invasion of privacy against the individual defendants.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

---

11. Although the target of the conduct is not an identified factor for analysis, the list is not exclusive. *Cf.* Restatement § 145(2) (introducing the list of factors with the word "include").

958

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 6th day of April, 2011.